OPINION
Defendant-appellant, Kenneth Sims, appeals his convictions for one count of attempted theft and one count of making false alarms following a bench trial conducted in the Fairfield Municipal Court. Upon review, we reverse in part and affirm in part.
Appellant's appeal stems from an incident involving the theft of ladders and other assorted equipment from a painting job site. For several weeks during the month of July 1997, appellant and four co-workers had been painting Cynthia Deddens' ("Deddens") home. The evidence reveals that sometime between 4:30 p.m. on Thursday, July 24, 1997 and 8:00 a.m. on Friday, July 25, 1997 all of appellant's ladders and other assorted painting equipment were allegedly stolen. At trial, testimony regarding the circumstances surrounding the theft of the ladders and other property was highly controverted.
Deddens testified that appellant and four of his co-workers had been working at the site for several weeks. Typically, she testified, they would tear down their equipment at the end of the day, lock up the ladders with a chain, and store their equipment in a trailer. Deddens testified that on Fridays, appellant and his co-workers would pack up the ladders, load them into one of their work vans, and take them away rather than simply locking them up for the evening.
On Thursday, July 24, 1997, Deddens testified that appellant and his co-workers began to pack up to leave at approximately 4:30 p.m. Deddens testified that about 5:00 p.m. she "heard a lot of commotion out front" and looked out her front window to see appellant and his co-workers loading all of the ladders into a white van. Deddens testified that appellant was driving the white van. Deddens further testified that she took note of these events because when she realized that appellant and his co-workers appeared to be packing up for the week she thought, "damn it now they're not going to finish my house." Deddens testified that they did not touch any of the equipment locked in the trailer before they left. Deddens left her residence for several hours that evening and noted nothing else out of the ordinary.
Approximately 8:30 a.m. the following morning, July 25, 1997, Deddens testified that she was interviewed by Officer Doug Day ("Day") of the City of Fairfield Police Department. Day testified that Deddens informed him that she had seen appellant and his coworkers return to the job site and load the ladders into a white van at approximately 5:00 p.m. Day testified that appellant told him that appellant and his co-workers left the job site at approximately 5:30 p.m. Day also testified that appellant told him that "[a]fter they locked up the ladders and left they did not come back" on the evening of July 24, 1997. While Day interviewed appellant about the report he had filed concerning theft of his ladders and other painting equipment, Day informed appellant that a witness reported that on July 24, 1997, she had watched appellant leave the job site at approximately 4:30 p.m. and return at approximately 5:00 p.m., and that she had watched as appellant loaded the ladders into a white van. Appellant denied being involved in the theft of his own equipment. Day also testified that, upon inspection, the chain with which the ladders were supposedly chained was broken, snapped, or cut.
Appellant's former business partner, Tim Kirker ("Kirker"), testified on behalf of the defense that he had been working with appellant on July 24, 1997. Kirker testified that neither he nor appellant owned a white van; Kirker testified that he owned a medium gray work van and appellant owned a red work van. Kirker further testified that he and his co-workers left the job site at approximately 5:30 p.m. on July 24, 1997, rather than at 4:30 p.m., and that he did not return to the job site that evening.
The defense called Officer Day on rebuttal. On rebuttal, for the first time, Day testified that appellant had admitted leaving the job site at approximately 4:30 p.m. on July 24, 1997, and returning to the job site at approximately 5:00 p.m. Specifically, the exchange between appellant's counsel and Day was as follows:
 Q. Did you testify that my client told you that he left at 4:30 and returned at 5:00?
A. Did I testify today of that, I don't remember.
Q. Well he never told you that did he?
A. Yes he did.
 Q. Oh he did. Now do you believe that's a significant issue in this case?
A. Yes it is.
 Q. And it would be significant that he wouldn't have admitted to you that he left at 4:30 and returned?
A. Yes it is.
 Q. It would be significant because to some degree it would confirm what Ms. Deddens says correct?
A. Yes it does.
 Q. OK, now did you recognize it as significant when he said it?
A. Yes I did.
Q. Recognized it right away?
A. Yes I did.
However, upon review, this court can find no such statement documented anywhere in the written notes contained in Day's case file.
Prior to trial, the prosecutor informed the court that the had stipulated that:
 A) Mr. Sims [appellant] was the owner of certain ladders that were on old Duxbury Court on July 24, 1997, [and] * * * B) that he did report that these ladders were stolen to the police department and to the insurance company.
Appellant filed a claim against his insurance company for approximately $2,500. No other evidence regarding the claim was presented at trial, nor is it clear from the record whether appellant's insurance claim was actually paid out, or whether the allegedly stolen property was ever recovered in appellant's possession.
Nevertheless, the trial court convicted appellant of one count of attempted theft in violation of Fairfield Ordinance 545.05(A)(1),[1]
and one count of making false alarms in violation of Fairfield Ordinance 509.07(A)(3).[2] In spite of Deddens' and Day's conflicting testimony, the trial court stated that it found both Deddens' and Day's testimony credible. Furthermore, the trial court stated that "[t]here's quite frankly even without the defendant's admission to the officer sufficient, circumstantial evidence that the defendant took the ladders * * *." (Emphasis added.) The court fined appellant $200 on each count, and sentenced him to ninety (90) days in jail on each count, with seventy (70) days suspended. The trial court ordered that each sentence be served concurrently.
In a single assignment of error, appellant argues that the trial court erred in convicting him. Specifically, appellant alleges that the trial court lost its way. Appellant urges this court to act as a "thirteenth juror" in reviewing the trial court's determination. Thus, appellant's assignment of error essentially contends that the trial court's determination was against the manifest weight of the evidence.
The standard for reversal for manifest weight of evidence has been summarized as follows:
 The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.
Tate v. Thompkins (1977), 78 Ohio St.3d 380, 387, quoting State v. Martin (1983), 20 Ohio App.3d 172, 175; App.R. 12(C). When considering a manifest weight of the evidence claim, an "appellate court sits as the `thirteenth juror.'" Thompkins at 387, quoting Tibbs v. Florida (1982), 457 U.S. 31, 45, 102 S.Ct. 2211, 2220. However, while weighing the evidence, the appellate court must be mindful that the original trier of fact was in the best position to judge the credibility of witnesses and determine the weight to be given to the evidence. State v. DeHass (1976), 10 Ohio St.2d 230, paragraph one of the syllabus.
Upon review of the record before this court, we have discovered that the complaint in this case fails to clearly identify the property which appellant is accused of stealing. The complaint simply states that appellant engaged "in conduct which, if successful, would constitute or result in a violation of Section 545.05," and identifies the value of the property as being under $500. Given the monetary value identified in the complaint, this court is forced to assume that the theft at issue in this case involved the theft of appellant's own ladders. Additionally, all of the evidence presented at trial suggests the prosecutor was building a case of appellant stealing his own ladders.
Given the nature of the evidence presented, the prosecution did not establish, beyond a reasonable doubt, that appellant committed a theft offense. However, even if we could find that the prosecution had established appellant committed such an offense, case law establishes that such a theft is a legal impossibility.
In order to sustain appellant's conviction as charged, the record would have to show that the prosecutor presented evidence that appellant knowingly deprived the owner of the property (himself), the use of the property (the ladders and other equipment), "[w]ithout the consent of the owner, or person authorized to give consent." Because appellant is/was the owner of the ladders that were reportedly stolen from the job site, it is axiomatic that if appellant did indeed steal the ladders, such a deprivation of property occurred with his consent; in other words, we must follow well-settled legal authority which establishes that it is legally impossible for one to steal from oneself.
 When the owner of property, or his authorized agent, solicits, encourages, or affirmatively assists in the taking of his own property * * * the owner has consented to the taking of his property and there is no indictable offense.
 State v. Troutman (July 6, 1994), Lorain App. Nos. 93CA005686, 93CA005687, 93CA005688, unreported, at 25, citing State v. Mehozonek (1983), 8 Ohio App.3d 271. Accordingly, we find that it is legally impossible for appellant to have committed the theft of his own ladders as charged.
The fact that appellant was charged with and convicted of attempted theft does not change the analysis. "[T]he essential elements of criminal attempt are the mens rea of purpose or knowledge, and conduct directed toward the commission of the offense." State v. Woods (1976), 48 Ohio St.2d 127, 131. Conduct that is under criminal attempt occurs when "an act or omission constituting a substantial step in a course of conduct planned to in his commission of crime" is undertaken. Id. at 132. Appellant may have engaged in conduct that could arguably be described as a "substantial step," but it was not a "substantial step" toward the commission of a crime. It is not a crime because, as we have discussed above, the commission of such a crime is a legal impossibility.
Because the complaint in this case fails to clearly identify the property which appellant is accused of stealing, we briefly turn our attention to the only other possible theft for which appellant could be convicted; the theft of the insurance company's property (i.e. financial proceeds) without the insurance company's consent. We begin by noting that the record before this court is devoid of any evidence suggesting that theft from the insurance company was the actual crime the prosecutor sought to establish. In fact, the only evidence presented regarding the insurance claim is the stipulation by the parties that appellant filed an insurance claim. The actual name of appellant's insurance company is not identified, nor, as discussed above, was any evidence presented at trial that the appellant was actually paid proceeds by his insurance company, nor was any of the equipment reported stolen by appellant subsequently recovered in his possession, or the possession of any of his agents.
In order for this court to sustain appellant's conviction as charged, the record before this court would have to show that appellant knowingly deprived the owner of the property (the insurance company), the use of the property (the proceeds), "[w]ithout the consent of the owner, or person authorized to give consent." Again however, upon analysis, we find that such a theft is a legal impossibility.
In State v. McGhee (1996), 113 Ohio App.3d 208, the Ninth District Court of Appeals was faced with a case in which the appellant and a co-defendant, Richardson, were charged with theft under R.C. 2913.02(A)(1)[3] as a result of their involvement in a check fraud scheme. Similar to the instant case, the appellant in McGhee challenged his conviction as being against the manifest weight of the evidence. In reversing appellant's conviction, the Ninth District stated:
 Here, the state failed to establish beyond a reasonable doubt, the essential elements necessary to uphold McGhee's conviction for theft. There was no evidence that McGhee deprived the victim, First National Bank, of its property without its consent. The bank clearly allowed Richardson and McGhee to make numerous withdrawals from the Richardson account before the $4700.00 check had cleared. While the evidence may have established that McGhee violated R.C. 3913.02(A)(3) (theft by deception), our decision must be based upon the offense for which McGhee was indicted, tried, and convicted. McGhee obtained or exerted control over the bank's property with the bank's consent. He was incorrectly indicted.
Id. at 211 (emphasis added).
In the instant case, there was no evidence presented that appellant ever exerted control over the insurance company's property, or actually deprived the insurance company of its property without its consent. Additionally, had such evidence actually been presented, on the authority of McGhee, appellant would have exercised control over the proceeds with the insurance company's consent. Accordingly, while the evidence presented in the instant case may have supported a conviction for attempted theft by deception, we find that it does not support a conviction for attempted theft of property without the owner's consent.
We hold that theft from oneself is a legal impossibility. Additionally, because the prosecution failed to present evidence that appellant deprived the insurance company of its property without its consent, we find the evidence fails to support appellant's conviction for theft of insurance proceeds as well. Thus, we reverse appellant's theft conviction as being against the manifest weight of the evidence.
Finally, we turn our attention to appellant's conviction for making false alarms in violation of F.C.O. 509.07(a)(3). In order for this court to sustain appellant's conviction for making false alarms, the record before us must show that the prosecutor presented evidence that appellant filed a police report alleging that his painting equipment was stolen, while knowing that such report was false. This is to say, that at the time of making the report, appellant knew that his equipment had not, in fact, been stolen.
The record before this court contains a stipulation that appellant reported that his painting equipment had been stolen to the Fairfield Police Department. Furthermore, the record contains evidence which, if believed by the fact finder, would establish that such report was false. Specifically, Deddens testified that she watched as appellant returned to the job site and loaded his ladders into a van.
This court will not substitute its judgment for that of the fact finder. State v. Jenks (1991), 61 Ohio St.3d 259, 279. Accordingly, we find that appellant's conviction for making false alarms was not against the manifest weight of the evidence. Appellant's conviction for making false alarms is therefore affirmed.
Judgment affirmed in part and reversed in part.
KOEHLER and POWELL, JJ., concur.
[1] Section 545.05(A)(1) of the Fairfield Codified Ordinance (F.C.O) is identical in substance to R.C. 2919.02(A)(1). F.C.O. 545.05 provides:
 (a) No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways:
 (1) Without the consent of the owner or person authorized to give consent[.]
[2] F.C.O. 509.07(a)(3) is identical in substance to R.C. 2910.02(A)(1). F.C.O. 509.07 provides:
(a) No person shall do any of the following:
 (1) Initiate or circulate a report or warning of an alleged or impending fire, explosion, crime or other catastrophe, knowing that the report or warning is false and likely to cause public inconvenience or alarm[.]
[3] R.C. 2913.02(A)(1) is the Revised Code section that is analogous to the ordinance under which appellant was charged in the instant case.