**The STATE of Ohio, Appellee,**

**v.**

**McGHEE, Appellant.**

[Cite as *State v. McGhee* (1996), 113 Ohio App.3d 208.]

Court of Appeals of Ohio,
Ninth District, Summit County.

No. 17504.

Decided July 31, 1996.

*Maureen O'Connor,* Summit County Prosecuting Attorney, and *Philip D. Bogdanoff,* Assistant Prosecuting Attorney, for appellee.

*Joy Wagner,* for appellant.

QUILLIN, Presiding Judge.

Calvin McGhee was indicted for theft in violation of R.C. 2913.02(A)(1). After a jury trial, he was found guilty as indicted. McGhee now appeals his conviction. For the reasons that follow, we reverse.

The state introduced the following evidence at trial. On January 9, 1995, McGhee asked a friend, Tawana Richardson, to open up an account at a local bank in her name. McGhee told her that he could not open the account himself because he did not have the proper identification. As a result, Richardson opened a savings account at First National Bank in Akron with $50 McGhee had given her. After opening the account, Richardson gave McGhee "the whole package" she had received from the bank, including an ATM card.

On January 12, 1995, McGhee presented Richardson with a $4,700 check drawn on Kerry Santana's account and made payable to Richardson. McGhee told Richardson that he received the check as payment for some furniture he had sold to Santana. Richardson deposited the check into the account at First National Bank. Over the next several days, McGhee withdrew over $1,000 from the Richardson account using several ATMs. On January 17, 1995, Richardson withdrew $3,700 from the savings account at McGhee's request. Richardson gave the $3,700 to McGhee and in return, McGhee gave her $100 for "helping him out."

On January 18, 1995, the $4,700 check that had been deposited into the Richardson account was returned to First National Bank marked "account closed." Because the returned check was so large and money had been withdrawn from the Richardson account, the bank conducted an investigation. The bank investigators questioned Richardson and learned that McGhee was involved. McGhee, however, refused to cooperate with the bank investigators, and the

matter was referred to the Akron Police Department. During the course of their investigation, the police discovered that Santana had not been involved in the check fraud scheme and ruled him out as a suspect. McGhee was eventually charged with theft in violation of R.C. 2913.02(A)(1).

At the conclusion of the state's case, McGhee moved for acquittal pursuant to Crim.R. 29. The trial court, however, denied the motion. The defense then presented only one witness, McGhee himself. McGhee denied asking Richardson to open the savings account for him and claimed he knew nothing about the $4,700 check. McGhee admitted to making several ATM withdrawals from the Richardson account, but claimed he had her permission to use the card.

Based on the evidence produced at trial, McGhee was found guilty as indicted. McGhee now appeals his conviction, raising two assignments of error for our review:

"I. The trial court erred in overruling appellant's Rule 29 motion for acquittal where the state of Ohio failed to prove each element of a violation of R.C. 2913.02(A)(1) beyond a reasonable doubt, thereby violating appellant's right to due process of law under the Fourteenth Amendment to the United States Constitution and Article I, Section 16 of the Ohio Constitution.

"II. The jury verdict finding appellant guilty of theft was against the manifest weight of the evidence in violation of appellant's right to due process of law under the Fourteenth Amendment to the United States Constitution and Article I, Section 16 of the Ohio Constitution."

McGhee first argues the state failed to prove all the elements of the crime charged in the indictment and, therefore, the trial court should have granted his motion for acquittal pursuant to Crim.R. 29. We agree.

Crim.R. 29 states:

"The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses. * * * "

In reviewing the appropriateness of such a motion, "a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt." *State v. Bridgeman* (1978), 55 Ohio St.2d 261, 9 O.O.3d 401, 381 N.E.2d 184, syllabus. In the present case, the

evidence presented at trial was insufficient to sustain McGhee's conviction for the offense presented in the indictment, *i.e.*, theft in violation of R.C. 2913.02(A)(1).

The theft statute, R.C. 2913.02, provides:

"(A) No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways:

"(1) Without the consent of the owner or person authorized to give consent;

"(2) Beyond the scope of the express or implied consent of the owner or person authorized to give consent;

"(3) By deception;

"(4) By threat."

Here, the state failed to establish, beyond a reasonable doubt, the essential elements necessary to uphold McGhee's conviction for theft. There was no evidence that McGhee deprived the victim, First National Bank, of its property without its consent. The bank clearly allowed Richardson and McGhee to make numerous withdrawals from the Richardson account before the $4,700 check had cleared. While the evidence may have established that McGhee violated R.C. 2913.02(A)(3) (theft by deception), our decision must be based upon the offense for which McGhee was indicted, tried, and convicted. McGhee obtained or exerted control over the bank's property with the bank's consent. He was indicted incorrectly.

Because the evidence was insufficient to support McGhee's conviction for theft under R.C. 2913.02(A)(1), the trial court erred in failing to grant McGhee's motion for acquittal. Accordingly, McGhee's first assignment of error is well taken, and his conviction must be reversed.

Given our treatment of McGhee's first assignment of error, we find that McGhee's second assignment of error is moot and is therefore overruled.

*Judgment reversed.*

EDWARD J. MAHONEY, J., concurs.

SLABY, J., dissents.

EDWARD J. MAHONEY, J., retired, of the Ninth Appellate District, sitting by assignment.

SLABY, Judge, dissenting.

The following evidence was before the jury. On January 9, 1995, McGhee asked Richardson to open a bank account at the First National Bank of Ohio ("Bank"). Richardson did so in her name with $50 provided by McGhee. In compliance with McGhee's specific request, Richardson provided him with the ATM card. Three days later, McGhee gave Richardson a signed check apparently from the checking account of Santana, allegedly as payment for furniture McGhee had sold to Santana. Santana testified that he did not know McGhee or Richardson, and that he had closed the account and thought he had disposed of all of the checks. On January 18, 1995, the drawee bank returned the check, unpaid, to Bank with the notation "account closed." Richardson also testified that McGhee had asked her on a later date to deposit a different check into a Star Bank account, but that the Star Bank would not accept the check because it was drawn on an account that had no funds.

On January 17, 1995, Richardson withdrew $3,700 from her Bank account and gave the money to McGhee. From January 12 through January 18, McGhee made numerous ATM withdrawals from Richardson's Bank account. During the police investigation, McGhee initially denied knowing Richardson and ever having been to Bank. He later recanted, explaining that he was withdrawing the money on Richardson's behalf. Still later, he stated to investigators that Richardson solicited him to open the account. At trial, McGhee testified that he received only $10 from Richardson for gas money.

To rephrase R.C. 2913.02(A)(1), McGhee was convicted of knowingly obtaining or exerting control over Bank's property without Bank's consent, with the purpose of depriving Bank of the property. The majority characterizes McGhee's withdrawals as his exerting of control over Bank's property with Bank's consent. There is authority to the contrary.

Where an employer originates a "sting" to test the honesty of its own security guards by staging a series of mock thefts, and the security guards cooperate with the purported theft, the employer has consented to the removal of its property, and the security guards cannot be convicted of theft, in violation of R.C. 2913.02(A)(1). *State v. Mehozonek* (1983), 8 Ohio App.3d 271, 8 OBR 364, 456 N.E.2d 1353. However, " ' "[i]f the criminal design originates with the accused, and the owner or his agent or servant does not suggest the design or actively urge the commission of the crime, the mere fact that the owner, suspecting the accused, * * * exposes the property, neglects to protect it, or furnishes facilities for the execution of the criminal design, under the expectation that the accused will take the property or avail himself of the facilities furnished, will not amount

in law to a consent[.]" ' " *Id.* at 275, 8 OBR at 368, 456 N.E.2d at 1357, quoting *Averitt v. State* (1963), 246 Miss. 49, 58–59, 149 So.2d 320, 324–325.

There is ample evidence in the record that McGhee originated his criminal designs before the "Santana" check was deposited. Had Bank been aware *ex ante* of McGhee's plans to deposit a bogus check and withdraw the proceeds, Bank would not be held to have consented. Bank's ignorance of McGhee's scheme cannot transform its conduct into "consent" and so excuse a defendant convicted under R.C. 2913.02(A)(1).

Nor does Bank's mistake in failing to hold the check amount until payment from the drawee bank arise to consent to defendant's control. In *State v. Montes* (1993), 92 Ohio App.3d 539, 636 N.E.2d 378, the city of Cleveland was held not to have consented to appellant's unlawful taking of a car the city mistakenly released to him. By the failure of its check-holding system, Bank no more consents to theft than it would to armed robbery by hiring sleepy security guards. In *Montes,* the court insisted that where a victim mistakenly releases property, the focus of inquiry under the consent element of R.C. 2913.02(A)(1) is upon the defendant's lack of lawful possession. *Id.* at 553, 636 N.E.2d at 386–387, citing *State v. Rhodes* (1982), 2 Ohio St.3d 74, 76, 2 OBR 629, 631, 442 N.E.2d 1299, 1301–1302. In contrast to the majority's reasoning in the case *sub judice,* the court's reasoning in *Montes* corresponds to the common-law roots of the Ohio theft statute.[1]

For these reasons, I dissent from the majority decision. I believe that McGhee's first assignment of error should be rejected, and the judgment of the trial court should be affirmed.

---

1. It was well settled at common law that the recipient of a mistaken delivery who appropriates the property commits a trespass in the taking, and so is guilty of larceny, if, realizing the mistake at the moment he makes delivery, he forms the intent to steal the property. LaFave & Scott, Criminal Law (1986) 713, Section 8.2. R.C. 2913.02 was intended to cover a plethora of former offenses "of which the gist was larceny, embezzlement, conversion, fraud, or false pretense[s]." R.C. 2913.02, Committee Comment to H.B. No. 511. On the consolidation of common-law crimes in theft statutes, see LaFave & Scott, at 759, Section 8.8.