# IN THE SUPREME COURT OF IOWA

No. 14–0969

Filed May 5, 2017

Amended July 18, 2017

**STATE OF IOWA,**

Appellee,

vs.

**BETTY ANN NALL,**

Appellant.

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Polk County, Terry R. Rickers, Judge.

The defendant requests further review of a court of appeals decision affirming her convictions for theft. **DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

Mark C. Smith, State Appellate Defender, and Nan Jennisch, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Kevin Cmelik and Thomas E. Bakke, Assistant Attorneys General, John Sarcone, Polk County Attorney, and Brendan Greiner, Assistant Polk County Attorney, for appellee.

**MANSFIELD, Justice.**

This case requires us to answer the following question: Does a person commit theft by taking within the meaning of Iowa Code section 714.1(1) (2013) when the person obtains property or services by delivering a phony check or money order? Here, the defendant removed money from her bank account after depositing several counterfeit checks and money orders. Later, she endorsed a counterfeit money order to a veterinary clinic to pay for boarding services. In both instances, she was charged with and convicted of "[taking] possession or control of the property of another," a violation of section 714.1(1). She now appeals, arguing that while her conduct may have been criminal, it did not violate this particular Code section.

For the reasons discussed below, we conclude that Iowa's theft-by-taking prohibition in section 714.1(1) is limited to situations where a person obtains property without the consent or authority of another. Accordingly, we vacate the decision of the court of appeals, affirm in part and reverse in part the judgment of the district court, and remand for further proceedings.

## I. Background Facts and Proceedings.

The following facts are drawn from the minutes of testimony and the defendant's in-court admissions. FECR268551. On August 2, 2012, Betty Ann Nall visited Earlham Bank in Des Moines and opened an account with a counterfeit U.S. postal money order in the amount of $890. Nall had received the money order from an internet secret shopper program that she suspected was a scam. On August 3, Nall deposited a check, purportedly issued by an Illinois company, in the amount of $1890. Nall withdrew $750 from the account that same day. On August 7, Nall deposited another counterfeit check and a duplicate of the U.S.

postal money order she had previously deposited and then withdrew $1500 from the account. Earlham Bank was later notified that all the deposited instruments were counterfeit. Meanwhile, Nall continued to draw from the account and write checks. As of June 17, 2013, the account was overdrawn $2736.20.

FECR268329. Nall boarded animals at Hubbell Animal Hospital, a veterinary clinic. On July 8, 2013, she visited the clinic to pick up the animals. Nall owed a total of $1265 for the services. Nall presented a fraudulent U.S. postal money order in the amount of $890 from the same secret shopper program. Nall told the clinic it was her only form of payment and endorsed the money order over to the clinic. Nall admitted she had a feeling the money order would not go through when she gave it to the clinic.

The clinic agreed to accept this partial payment and release the animals so long as Nall returned within a week to pay the balance. Nall never paid the balance or replaced the money order when it was declined.

In FECR268551, the State charged Nall with four counts of forgery, all class "D" felonies, *see* Iowa Code § 715A.2(1), (2)(*a*)(3), and second-degree theft, also a class "D" felony, *see id.* § 714.2(2), all related to the account at Earlham Bank. The theft charge stated that Nall "took possession or control of the property of another; the property having a value in excess of $1,000 but not exceeding, $10,000, with the intent to deprive the owner thereof." Because Nall had previously been convicted of several second-degree theft offenses, the State also gave notice of the applicable habitual offender statute. *See id.* § 902.8.

In FECR268329, the State charged Nall with forgery, a class "D" felony, *see id.* § 715A.2(1), (2)(*a*)(1), and third-degree theft, an aggravated misdemeanor, *see id.* § 714.2(3). The trial information stated that Nall

had committed theft "by taking possession and/or control of the property, to wit: Services, of Hubbell Animal Hospital with the intent to deprive Hubbell Animal Hospital thereof." The State again relied on Nall's previous convictions to invoke the same habitual offender provision.

On February 28, 2014, Nall pled guilty to the forgery and third-degree theft charges stemming from the Hubbell Animal Hospital transaction. That same day, she waived her right to a jury trial and proceeded to a bench trial on the minutes of testimony in the Earlham Bank case. The court found Nall guilty of four counts of forgery and one count of second-degree theft. Nall's convictions in both cases were subject to the habitual offender enhancement.

In FECR268329, Nall was sentenced on the forgery count to an indeterminate term not to exceed fifteen years with a mandatory minimum three-year term of imprisonment. Nall received a concurrent two-year indeterminate sentence on the third-degree theft. In FECR268551, Nall was sentenced on each of the five counts to an indeterminate term of fifteen years with a mandatory three-year minimum. All five sentences were ordered concurrent. The court ordered, however, that the sentences in FECR268329 and FECR268551 run consecutive to each other.

On appeal, Nall has challenged only her two theft convictions. She argues her conduct did not constitute "theft by taking" within the meaning of Iowa Code section 714.1(1) in either case because she did not take property without the consent or authority of the veterinary clinic or the bank. She points out her conduct in these cases more closely resembles other forms of theft that were not the basis of her charges or convictions. Accordingly, she maintains that the record does not

establish a factual basis for her guilty plea to third-degree theft in FECR268329 and her trial counsel was ineffective in allowing her to plead guilty in that case. She also urges there was insufficient evidence to sustain the second-degree theft conviction in FECR268551.

We transferred the case to the court of appeals, which affirmed both convictions. The panel rejected Nall's arguments, reasoning that the factual record in both cases could sustain her convictions so long as she knew the money orders were fraudulent at the time she exchanged them for her animals in FECR268329 or cash in FECR268551.

We granted Nall's application for further review.

**II. Standard of Review.**

Nall argues a person cannot take unlawful possession or control of property within the meaning of Iowa Code section 714.1(1) when that property was obtained through deception or fraud. "We review issues of statutory interpretation for correction of errors at law." *Rhoades v. State*, 848 N.W.2d 22, 26 (Iowa 2014). We also review sufficiency-of-the-evidence claims for correction of errors at law. *State v. Rooney*, 862 N.W.2d 367, 371 (Iowa 2015).

"We ordinarily review challenges to guilty pleas for correction of errors at law." *State v. Fisher*, 877 N.W.2d 676, 680 (Iowa 2016). However, to the extent a defendant claims her guilty plea was the result of trial counsel's ineffective assistance, our review is de novo. *State v. Utter*, 803 N.W.2d 647, 651 (Iowa 2011); *accord State v. Ortiz*, 789 N.W.2d 761, 764 (Iowa 2010).

**III. Analysis.**

**A. Interpretation of the Statute.** Iowa Code section 714.1(1) provides that a person commits "theft by taking" when he or she "[t]akes possession or control of the property of another, or property in the

possession of another, with the intent to deprive the other thereof." For purposes of theft by taking, the term "property" includes "both tangible and intangible property, labor, and services." Iowa Code § 702.14; *see id.* § 702.1 (providing that the definitions in chapter 702 apply to the criminal code unless specially defined).

The elements of theft by taking, therefore, are: (1) the defendant took possession or control of property; (2) the defendant did so with the intent to deprive another of that property; and (3) the property belonged to, or was in the possession of, another at the time of the taking. *See State v. Thornton*, 506 N.W.2d 777, 780 (Iowa 1993); *State v. Garr*, 461 N.W.2d 171, 173 (Iowa 1990).

Nall does not dispute the presence of the second and third elements here. The fighting issue in this case is whether Nall took possession or control of property, within the meaning of section 714.1(1), by presenting counterfeit financial instruments in exchange for property.

When we are asked to interpret a statute, we first consider the plain meaning of its language. *State v. McIver*, 858 N.W.2d 699, 703 (Iowa 2015). If the statute is unambiguous, we will apply it as written. *See State v. Howse*, 875 N.W.2d 684, 691 (Iowa 2016). A statute is ambiguous "if reasonable minds can disagree on the meaning of particular words or the statute as a whole." *McIver*, 858 N.W.2d at 703. For purposes of this initial review for ambiguity, "we assess the statute in its entirety, not just isolated words or phrases." *Howse*, 875 N.W.2d at 691 (quoting *Schaefer v. Putnam*, 841 N.W.2d 68, 75 (Iowa 2013)).

We conclude that reasonable minds can differ as to the proper interpretation of the statute, and therefore it is ambiguous. The phrase "[t]akes possession or control" conceivably could refer to *any* situation where the defendant wrongfully obtains possession of another person's

property.  Alternatively, it may refer only to situations where the defendant deprives another person *involuntarily* of his or her property.

Notably, Iowa Code section 714.1 prescribes ten different ways that a person can commit "theft."  Other theft offenses within the section embrace circumstances where the defendant gets property through a voluntary, but legally tainted, exchange.  *See, e.g.*, Iowa Code § 714.1(3) ("Obtains the labor or services of another, or a transfer of possession, control, or ownership of the property of another, or the beneficial use of property of another, by deception."); *id.* § 714.1(6) ("Makes, utters, draws, delivers, or gives any check, share draft, draft, or written order on any bank, credit union, person, or corporation, and obtains property, the use of property, including rental property, or service in exchange for such instrument, if the person knows that such check, share draft, draft, or written order will not be paid when presented.").  The presence of these alternatives suggests that "takes" in subsection 1 may mean something different from just "obtains."

Once we have considered the statute in its entirety and determined that it is ambiguous, we may resort to other interpretive tools.  *See State v. Hoyman*, 863 N.W.2d 1, 13 (Iowa 2015).  We have said that "ambiguities in statutes can be clarified by looking at the background and history of the statute."  *McIver*, 858 N.W.2d at 704; *see also* Iowa Code § 4.6(2)–(3) (providing that the court may consider "[t]he circumstances under which the statute was enacted" and "[t]he legislative history" of an ambiguous statute).  In addition, "we try to interpret statutes in a way that avoids rendering parts of them superfluous."  *State v. Merrett*, 842 N.W.2d 266, 275 (Iowa 2014); *see also* Iowa Code § 4.4(2) (setting forth the presumption that an entire statute is intended to be effective); *State v. Wiseman*, 614 N.W.2d 66, 67

(Iowa 2000) ("We will not interpret statutes in a way that makes portions of them irrelevant or redundant."). Also, when interpreting statutes, we look to the provisions and comments of model acts as persuasive authority. *See, e.g., State v. Lindell*, 828 N.W.2d 1, 7–8 (Iowa 2013). Finally, under the rule of lenity, we take a narrow approach to construing ambiguous criminal laws. *Hoyman*, 863 N.W.2d at 18.

The offense of theft by taking derives from the former crime of larceny. *See State v. Berger*, 438 N.W.2d 29, 31 (Iowa Ct. App. 1989); *see also State v. Jackson,* 251 Iowa 537, 542, 101 N.W.2d 731, 734 (1960) ("[L]arceny is committed by a wrongful taking from one who has rightful possession."). Until 1978, Iowa's larceny offenses were contained in chapter 709 of the Code. *See* Iowa Code ch. 709 (1977). Larceny was defined generally as "steal[ing], tak[ing], and carry[ing] away of the property of another any money, goods, or chattels." *Id.* § 709.1. Notably, offenses related to "False Pretenses, Frauds and Other Cheats" were contained in a separate chapter of the Code, chapter 713. *See* Iowa Code ch. 713. Specifically, former Code section 713.3 provided that a person was guilty of a felony if he or she presented a financial instrument to another in order to secure property, with a "fraudulent intent" and knowledge there were no funds in the account to meet the value of the property. *See id.* § 713.3.

Then, effective 1978, the legislature revised the Iowa Criminal Code and consolidated many of Iowa's theft offenses into one Code chapter, broadly titled "Theft." *See* 1976 Iowa Acts ch. 1245, ch. 1, § 1401–08 (codified at Iowa Code §§ 714.1–.8 (Supp. 1977)); Kermit L. Dunahoo, *The New Iowa Criminal Code*, 29 Drake L. Rev. 237, 368 (1979–1980) [hereinafter Dunahoo]. Section 714.1 collected six definitions of theft that had been previously scattered among four separate Code chapters.

1976 Iowa Acts ch. 1245, ch. 1, § 1401; *see* 4 John L. Yeager & Ronald L. Carlson, *Iowa Practice*™: *Criminal Law & Procedure* § 311, at 79 (1979) (noting that section 714.1 was designed "to treat as theft every action by which one knowingly and wrongfully deprived another" of property) [hereinafter Yeager & Carlson].  Hence, following the revision, a person could commit a "theft" in Iowa regardless of whether the offense was formerly defined as larceny, *see* Iowa Code ch. 709, embezzlement, *see id.* ch. 710, receiving stolen goods, *see id.* ch. 712, or false pretenses and frauds, *see id.* ch. 713.  Although the legislature has since added new definitions of theft in section 714.1, those core offenses have remained largely unchanged.

The legislature did eliminate the old larceny requirement of asportation, or carrying away, for what became theft by taking in the Iowa Criminal Code.  *See* Dunahoo, 29 Drake L. Rev. at 373; *see also State v. Donaldson*, 663 N.W.2d 882, 885 (Iowa 2003).  Thus, Iowa Code section 714.1(1) no longer requires physical movement of the property.  This is consistent with the broader definition of property in the Iowa Criminal Code.  *See* Dunahoo, 29 Drake L. Rev. at 373 ("[A] thief can wrongfully assume possession or control over electric current through meter tampering, but can hardly carry it away."); *see also* 4 Yeager & Carlson § 313, at 80 ("One may take possession only of tangible property, but one may take control of any kind of property . . . .").

Still, this does not necessarily mean that the legislature intended Iowa Code section 714.1(1) to subsume the other subsections of newly enacted section 714.1.  If section 714.1(1) applied whenever the defendant tricked the victim into voluntarily transferring property, there would be no need for section 714.1(3) covering "a transfer of possession, control, or ownership of the property of another . . . by deception."  Iowa

Code § 714.1(3) (2013); *see also State v. Hogrefe*, 557 N.W.2d 871, 876 (Iowa 1996) (noting "the legislature's intent [in Iowa Code section 714.1(3)] to criminalize every instance of a person obtaining another person's property by deception"). Similarly, if passing a knowingly bad check or money order to obtain services or property violated section 714.1(1), then section 714.1(6) would seem unnecessary.

"The Iowa theft statute [in Iowa Code section 714.1(1)] is modeled after the Model Penal Code, with slight variation." *Donaldson*, 663 N.W.2d at 885. Under the Model Penal Code, "[a] person is guilty of theft if he unlawfully takes, or exercises unlawful control over, movable property of another with purpose to deprive him thereof." Model Penal Code § 223.2(1), at 162 (Am. Law Inst. 1962). Use of the term "unlawful" in the Code "implies the lack of consent or authority." *Id.* cmt. 3, at 166. "[T]he critical inquiry is thus twofold: whether the actor had control of the property, no matter how he got it, and whether the actor's acquisition or use of the property was authorized." *Id.* cmt. 2, at 166. This stands in contrast to a separate provision of the Model Penal Code related to theft by deception, *id.* § 223.3, at 179, which covers thefts "that derive[] from the traditional offense of obtaining property by false pretenses," and therefore "adopts a comprehensive definition of criminal fraud," *id.* cmt. 1, at 180–81. Hence, construing section 714.1(1) as only applying to a taking without consent or authority would be consistent with the Model Penal Code's definition of a theft by taking.

In *Donaldson,* we were asked to determine whether a person had taken "possession or control" of a vehicle when that person had already gained entrance to the vehicle but had not yet driven it away. *See Donaldson*, 663 N.W.2d at 884. We affirmed the defendant's theft-by-taking conviction, reasoning that "at the moment [the defendant] began

to manipulate the electrical wires for the purpose of starting the engine, he exerted complete control over the vehicle." *Id.* at 887.

We recognized that "[t]he critical issue, as the statute dictates, is *not* whether the defendant used or operated the object of the theft," but instead "whether he exercised wrongful dominion or unauthorized control of the van." *Id.* at 886. We continued,

> The Model Penal Code contemplates "control" of the object to begin when the defendant "use[s] it in a manner beyond his authority." The method of exerting control over the object of the theft is important only insofar as it "sheds light on the authority of the actor to behave as he did." Our statute replaces the common law element of "taking" with "possession." The Model Penal Code provides a person commits theft if he or she "unlawfully takes, or exercises unlawful control over" the property of another. A taking in this sense concerns whether the offender exerted control over the object "adverse to or usurpatory of the owner's dominion." That is, one possesses an object if he or she secures dominion over it. To summarize the above concepts, "possession or control" begins and a theft is completed when the actor secures dominion over the object or uses it in a manner beyond his authority.

*Id.* at 885–86 (alteration in original) (citation omitted) (quoting Model Penal Code § 223.2, cmt. 2, at 166, then *id.* at 162, then quoting *State v. Victor*, 368 So. 2d 711, 714 (La. 1979)). *Donaldson* focused on *when* a change of possession and control occurs for purposes of theft by taking. In this case, though, the key question is *how* a change of possession and control must occur. *Donaldson* does not address this issue.

More to the point than *Donaldson*, we believe, is our earlier decision in *State v. Williams*, 328 N.W.2d 504 (Iowa 1983). In that case, the defendant was charged with theft by taking under Iowa Code section 714.1(1) after he showed up at a coin shop with sterling silverware that had recently been stolen from a home. *Id.* at 504. At trial, the defendant relied on an alibi defense that placed him at a bar when the burglary was

alleged to have occurred.  *Id.* at 505.  After the defense rested, and the defendant's motion for judgment of acquittal as to the theft-by-taking charge had been denied, the state moved to amend the trial information to add a theft-by-exercising-control-over-stolen-property theory based on section 714.1(4).  *Id.*  The jury found the defendant guilty under section 714.1(4), but not guilty under 714.1(1).  *Id.*

On appeal, we reversed the defendant's conviction on the ground that the last-minute amendment was prejudicial and should not have been allowed.  *Id.* at 505–06.  We noted the defendant had testified that he purchased the silver from an unknown individual on the assumption he was being charged only with theft by taking.  *Id.*  We added that he "probably would not have testified if he had gone to trial knowing that he also would be charged with committing theft by exercising control over stolen property."  *Id.* at 506.  Although we acknowledged that the amendment did not change the offense charged, we did not suggest that the amendment was *unnecessary* or that a section 714.1(1) charge could sustain a conviction under a section 714.1(4) theory.  *See id.*  In fact, we indicated the opposite.

Courts in other jurisdictions have explored the distinction between theft by taking and theft by deception.  For example, in *State v. Jonusas*, the Nebraska Supreme Court upheld the defendant's conviction for theft by taking even though the defendant had been charged only with theft by deception.  *See* 694 N.W.2d 651, 655 (Neb. 2005).  As in Iowa, the two theft alternatives are separately defined, and the issue was therefore "whether a defendant may be charged with theft by one manner and subsequently convicted of theft by another manner."  *Id.*; *see also* Neb. Rev. Stat. Ann. § 28-511(1) (West, Westlaw through legis. effective Mar. 30, 2017) (theft by unlawful taking); *id.* § 28-512 (theft by deception).

However, in Nebraska, a separate statute entitled "Consolidation of theft offenses" provides that all variants of theft constitute a single offense. *See* Neb. Rev. Stat. Ann. § 28-510. The statute further provides that "[a]n accusation of theft may be supported by evidence that it was committed *in any manner* that would be theft under sections 28-509 to 28-518." *Id.* (emphasis added). The Nebraska court found that the plain language of this consolidation statute authorized the defendant's conviction for theft by deception. *Jonusas*, 694 N.W.2d at 656.

As noted in *Jonusas*, the Nebraska consolidation statute mirrors language set forth in Model Penal Code section 223.1(1). *Id.* at 655.[1]

---

[1]At least sixteen other states have enacted similar consolidation provisions. *See* Alaska Stat. Ann. § 11.46.110 (West, Westlaw current through 2016 2d Reg. Sess. & 5th Spec. Sess.); Ark. Code Ann. § 5-36-102 (West, Westlaw current through Apr. 7, 2017, of Reg. Sess. of the 91st Gen. Assemb.); Del. Code Ann. tit. 11, § 841(a) (West, Westlaw current through 81 Laws 2017, ch. 2); Haw. Rev. Stat. Ann. § 708-835 (West, Westlaw current though 2016 2d Spec. Sess.); Idaho Code Ann. § 18-2401 (West, Westlaw current through ch. 213 of 1st Reg. Sess.); Me. Rev. Stat. Ann. tit. 17-A, § 351 (Westlaw through ch. 3 of 2017 1st Reg. Sess. of 128th Leg.); Nev. Rev. Stat. Ann. § 205.0833 (West, Westlaw current through 79th Reg. Sess.); N.H. Rev. Stat. Ann. § 637:1 (Westlaw current through ch. 20 of 2017 Reg. Sess.); N.J. Stat. Ann. § 2C:20-2 (West, Westlaw current through L.2017, c.39 and J.R. No. 1); N.D. Cent. Code Ann. § 12.1-23-01 (West, Westlaw current through 2017 Reg. Sess. of 65th Legis. Assemb.); Or. Rev. Stat. Ann. § 164.025 (West, Westlaw through ch. 13 of 2017 Reg. Sess.); 18 Pa. Stat. and Cons. Stat. Ann. § 3902 (West, Westlaw current through 2017 Reg. Sess. Act 1); S.D. Codified Laws § 22-30A-15 (Westlaw current through 2017 Reg. Sess.); Tenn. Code Ann. § 39-14-101 (West, Westlaw current through 2017 1st Reg. Sess.); Tex. Penal Code Ann. § 31.02 (West, Westlaw current through 2015 Reg. Sess. of 84th Leg.); Utah Code Ann. § 76-6-403 (West, Westlaw current through various chs. of 2017 Gen. Sess.).

Georgia law provides, "A person commits the offense of theft by taking when he unlawfully takes . . . any property of another with the intention of depriving him of the property, regardless of the manner in which the property is taken or appropriated." Ga. Code Ann. § 16-8-2 (West, Westlaw current through Acts 1 to 11, 13 to 17, and 19 of 2017 Legis. Sess.). A Georgia court has held that this verbiage is "broad enough to encompass theft by conversion [and] theft by deception." *State v. Meeks*, 711 S.E.2d 403, 408 (Ga. Ct. App. 2011) (quoting *Bradford v. State*, 596 S.E.2d 715, 718 (Ga. Ct. App. 2004)). However, Iowa does not have this type of consolidation language, either.

Other states in addition to Georgia have opted to unify the definition of theft. *See* Fla. Stat. Ann. § 812.012(3) (West, Westlaw through 2017 1st Reg. Sess. of 25th Leg.); Ind. Code Ann. § 35-43-4-1(b) (West, Westlaw current through 1st Reg. Sess. of 120th Gen. Assemb.); La. Stat. Ann. § 14:67(A) (Westlaw current through 2017 1st

However, the Iowa legislature chose not to adopt the consolidation provision of the Model Penal Code when it enacted Iowa Code chapter 714. *See State v. Miller*, 590 N.W.2d 45, 47 (Iowa 1999) (finding it significant, when interpreting Iowa's theft-by-deception offense, that our legislature elected not to incorporate certain Model Penal Code language). Nor does the State argue here that Nall can be convicted under a subsection of 714.1 other than the one charged.

Wyoming's theft statutes, like Iowa's, do not contain a consolidation provision. *See* Wyo. Stat. Ann. tit. 6, ch. 3, art. 4 (West, Westlaw through laws effective Mar. 17, 2017). In *Kiet Hoang Nguyen v. State*, the defendant pled guilty to larceny after he had opened a bank account, deposited several bad checks, immediately withdrawn cash, and left without ever returning to the bank. 299 P.3d 683, 687 (Wyo. 2013). On appeal, the Wyoming Supreme Court reversed the defendant's conviction, recognizing that Wyoming's larceny statute required a nonconsensual taking. *Id.* at 687, 689. "Even though the bank's consent and release of the money to Mr. Nguyen might have been based upon a false representation, . . . no trespassory nonconsensual taking occurred," the court said. *Id.* at 688. According to the court, upholding the guilty plea would mean that "[s]o long as the defendant admitted he had done something criminal, a conviction for any crime could stand." *Id.* The court analogized the case to another of its recent decisions, *Powell v. State*, in which it reversed a conviction for larceny even though the conduct "may have been criminal under other statutes, such as obtaining property by false pretenses." *Id.* at 687–88 (citing *Powell v.*

_____

Extraordinary Sess.); Mass. Gen. Laws Ann. ch. 266, § 30(1) (West, Westlaw current through ch. 9 of 2017 1st Ann. Sess.).

*State*, 282 P.3d 163, 167 (Wyo. 2012)). *Kiet Hoang Nguyen* appears directly on point with our case.

Similarly, the Ohio Court of Appeals has held that evidence of a theft by deception cannot sustain an indictment and conviction on a theft-by-taking theory. *See State v. McGhee*, 680 N.E.2d 710, 712 (Ohio Ct. App. 1996). In *McGhee*, the defendant had convinced a friend, Richardson, to open a bank account and deposit a bad check in the amount of $4700. *Id.* at 710. The pair then withdrew $4700 from the account before the bank was notified that the check had bounced. *Id.* Ohio's theft statute provided that "[n]o person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services *in any of the following ways*[.]" *Id.* (emphasis added) (quoting Ohio Rev. Code. § 2913.02(A)). McGhee was charged under subsection one, theft "[w]ithout the consent of the owner," not subsection three, theft "[b]y deception." *Id.* at 710, 711.

The defendant appealed his conviction, and the court reversed judgment. *Id.* at 712. The court reasoned that there was no evidence of a nonconsensual taking, which the court deemed an "essential element[]" of the offense McGhee was convicted of. *Id.* at 711.

> The bank clearly allowed Richardson and McGhee to make numerous withdrawals from the Richardson account before the $4,700 check had cleared. While the evidence may have established that McGhee violated R.C. 2913.02(A)(3) (theft by deception), our decision must be based upon the offense for which McGhee was indicted, tried, and convicted. McGhee obtained or exerted control over the bank's property with the bank's consent. He was indicted incorrectly.

*Id.*

Still other courts have recognized and enforced distinctions among the various theft offenses. *See Sheffield v. State*, 706 So. 2d 1282, 1286 (Ala. Crim. App. 1996) (determining that a person cannot take

"unauthorized control over the property of another" when the person is the sole shareholder of a corporation); *People v. Beaver*, 111 Cal. Rptr. 3d 726, 738, 742 (Ct. App. 2010) (reversing a grand larceny conviction after concluding the offense "was theft by false pretenses, not larceny"); *People v. Warner*, 801 P.2d 1187, 1192 (Colo. 1990) (en banc) (upholding the reversal of a conviction for "theft from the person" even when the evidence "suffice[d] to show that [the defendant] committed the crime of theft by deception"); *State v. Rios*, 792 P.2d 1065, 1073 (Kan. 1990) (reversing convictions for theft by deception when theft by embezzlement should have been charged); *Allen v. Commonwealth*, 395 S.W.3d 451, 459 (Ky. 2013) ("Inducing a voluntary transfer is the essence of fraud and is what differentiates it from simple theft."); *cf. People v. Graves*, 800 N.E.2d 790, 793 (Ill. 2003) ("That the single offense of theft may be *performed* in a number of ways necessarily requires that [it] be *defined* in a number of ways. Otherwise, theft could be committed in only one way, which is plainly not the case.").

In our research, we have found only one jurisdiction, Montana, that arguably allows theft by taking to cover theft by deception without a statutory consolidation provision. *See State v. Meeks*, 176 P.3d 1073 (Mont. 2008). In *Meeks*, the defendant had stolen property from several "big box" stores using three different methods:

> In the first method, Meeks would walk into a store, load a shopping cart with merchandise, and then take it to the return counter and "return" the items without a receipt, usually in exchange for a store gift card. The second method involved price-switching by Meeks—taking bar code stickers from less expensive items and putting them onto more expensive items, then purchasing the more expensive items at the lesser price. In the third method, Meeks would bring a receipt into a store, pick up the items listed on that receipt from store shelves, and then take the items to the return counter for a cash refund.

*Id.* at 1074. Meeks was charged with and convicted of "theft by common scheme," which required the state to prove the defendant "purposely or knowingly obtain[ed] or exert[ed] unauthorized control over property." *Id.* (quoting Mont. Code Ann. § 45-6-301(1)(a) (2003)).

On appeal, Meeks challenged the basis for his convictions. The court first concluded that Montana's theft-by-taking provision was intended to encompass all forms of theft, and therefore the charge and conviction "reflects the intent behind the statute." *Id.* at 1075. The court further determined that although Meeks' conduct was clearly misleading, the record also contained evidence of "unauthorized control" sufficient to support the theft-by-taking conviction. *Id.* A store employee had testified that no store customers were authorized to take items off the shelves, walk up to the customer service desk, and ask for a refund for unpaid items. *Id.* Similarly, store employees explained that no one is authorized to remove price stickers and replace them with lower-priced tags. *Id.*

Importantly, the facts of *Meeks* might have supported a conviction for theft by taking even under a narrower definition of that offense. Unlike the situation where a customer, say, removes an item from a store shelf and then writes a bad check at the checkout counter for the full cost of that item, Meeks exercised wrongful dominion and control over store-owned merchandise (either by switching the tags or by bringing it to the return counter) before he actually deceived a store employee. *See Simon v. State*, 349 P.3d 191, 197 (Alaska Ct. App. 2015) (recognizing the "types of conduct that a person can engage in, within the confines of a retail store, that are inconsistent with a customer's scope of authority").

Weighing all of the foregoing considerations, we are persuaded that Nall's interpretation of Iowa Code section 714.1(1) is the correct one. In

order to "[take] possession or control" under that section, a person must acquire property without the consent or authority of another. This conclusion affirms the importance of the method of obtaining property under section 714.1 and avoids rendering section 714.1(3) and 714.1(6) superfluous.[2] Any other interpretation would have the practical effect of transforming our theft-by-taking statute into a catch-all provision, which we do not believe the legislature intended. To the contrary, it seems clear that the legislature based section 714.1(1) on the prior crime of larceny as modified by the Model Penal Code provision on theft by taking. This interpretation also accounts for the rule of lenity.

**B. Disposition.** We must now apply our construction of Iowa Code section 714.1(1) to the facts of this case.

In FECR268551, Nall was convicted of theft by taking after a trial on the minutes. We believe there is insufficient evidence to support this guilty verdict. Here, the bank consented to Nall's withdrawals because it believed there were good funds in the account based on Nall's prior deposits of fraudulent instruments. Such conduct does not constitute theft by taking. Therefore, we reverse Nall's conviction on the second-degree theft charge with instructions that it be dismissed. *See State v. Isaac*, 756 N.W.2d 817, 821 (Iowa 2008); *State v. Bash*, 670 N.W.2d 135, 139 (Iowa 2003).

In FECR268329, Nall pled guilty to theft by taking. She now claims her counsel rendered ineffective assistance in allowing her to do so. "Where a factual basis for a charge does not exist, and trial counsel

---

[2]In *Hogrefe*, we recognized that Iowa Code section 714.1(3) and section 714.1(6) "clearly overlap." 557 N.W.2d at 877. But, at the same time, we emphasized that the overlap was not complete and that each provision covers some conduct not covered by the other provision. *See id.* at 877–88.

allows the defendant to plead guilty anyway, counsel has failed to perform an essential duty." *State v. Schminkey*, 597 N.W.2d 785, 788 (Iowa 1999). "Prejudice is inherent in such a case." *State v. Gines*, 844 N.W.2d 437, 441 (Iowa 2014).

Under the interpretation of Iowa Code section 714.1(1) set forth above, no factual basis for Nall's plea exists. Although Nall paid for the services (or some of them) with a phony money order, Nall did not remove her animals from the clinic without the clinic's consent or authority. Furthermore, the animals were *her* animals and there is no indication the clinic had a lien on them. It is true that the clinic was never paid for its services, but nothing indicates that Nall lacked the intent to pay for those services when she actually obtained them. Under these facts, a factual basis may exist for a charge under section 714.1(6) (theft by check), but not under section 714.1(1).

Additionally, with respect to Nall's theft-by-taking guilty plea, we are not persuaded that a factual basis could be established on remand. *See Schminkey*, 597 N.W.2d at 792. Thus, we vacate the judgment of conviction and sentence and remand for dismissal of the third-degree theft charge. *Id.*[3]

As we have already mentioned, Nall did not challenge the forgery convictions in either FECR268329 or FECR268551. When only one of several convictions is reversed on appeal, an appellate court may remand the entire case for resentencing. *See State v. Madsen*, 813 N.W.2d 714, 730 (Iowa 2012). Or, when appropriate, "the judgment and sentence for

---

[3]We note that Nall did not plead guilty to the theft charge in FECR268329 as part of a plea bargain. *See State v. Allen*, 708 N.W.2d 361, 369 (Iowa 2006) ("The proper remedy when counsel fails to perform an essential duty by not challenging a plea for lack of a factual basis when the plea is a result of a plea bargain is to invalidate the entire plea bargain . . . .").

the conviction that was reversed can be severed and the remaining sentence for the convictions that were not reversed can stand." *State v. Hopkins*, 860 N.W.2d 550, 554 (Iowa 2015). In her appellate brief, Nall asks only that her *theft* convictions and sentences be vacated.

We elect to sever the judgment and sentence for each theft conviction and allow the remaining sentences in both cases to stand. In FECR268551, Nall's fifteen-year theft sentence was ordered to run concurrent with four forgery sentences, each of which carried the same fifteen-year term. In FECR268329, Nall's two-year theft sentence was ordered to run concurrent to her fifteen-year indeterminate sentence for forgery. We do not believe the theft convictions and sentences affected the court's sentencing decision on the remaining charges. *Cf. Madsen*, 813 N.W.2d at 730 (remanding for resentencing on the remaining counts after vacating the conviction on one count and noting that "the district court considered the fact Madsen was convicted on three counts when imposing the consecutive maximum sentences").

## IV. Conclusion.

For these reasons, we vacate the decision of the court of appeals, affirm in part and reverse in part the judgment of the district court, and remand for further proceedings consistent with this opinion.

**DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**