**IN THE COURT OF APPEALS OF IOWA**

No. 23-1616
Filed April 9, 2025

**CHARLES JONAS HASSELMANN,**
    Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
    Respondent-Appellee.
_____

    Appeal from the Iowa District Court for Polk County, David Nelmark, Judge.


    An applicant appeals the denial of his application for postconviction relief.

**AFFIRMED.**


    Leah Patton of Patton Legal Services, LLC, Ames, for appellant.

    Brenna Bird, Attorney General, and Joseph D. Ferrentino, Assistant Attorney General, for appellee State.


    Considered without oral argument by Schumacher, P.J., and Badding and Chicchelly, JJ.

**BADDING, Judge.**

In September 2017, after a bench trial on the minutes of testimony, the district court convicted Charles Hasselmann of three counts of first-degree theft and four counts of forgery. The convictions stemmed from what Hasselmann contends was his innocent role in a secret shopper internet scam targeting car dealerships. Hasselmann dismissed his direct appeal and first application for postconviction relief. He filed a second application in September 2020, raising the same ineffective-assistance claims that were at issue in his first application. The district court granted the State's motion for summary dismissal. We reversed the court's ruling and remanded for a hearing on his postconviction-relief application. *See Hasselmann v. State*, No. 21-0483, 2022 WL 951084, at *1 (Iowa Ct. App. Mar. 30, 2022).

On remand, Hasselmann asserted defense counsel was ineffective by (1) failing to object to amendments of the trial information, (2) permitting him to consent to a trial on the minutes, (3) leading Hasselmann to believe there was a plea offer for probation, (4) failing to challenge the sufficiency of the evidence for his theft convictions, and (5) arguing for prison when Hasselmann had not authorized that recommendation. He also raised an actual innocence claim. The district court rejected all these claims and denied Hasselmann's application for postconviction relief. Hasselmann appeals, asserting the same claims he raised in district court, plus a new ineffective-assistance claim about a sentencing issue.

## I.      Standard of Review

Postconviction-relief proceedings are normally reviewed for correction of errors at law. *See* Iowa R. App. P. 6.907; *Krogmann v. State*, 914 N.W.2d 293,

306 (Iowa 2018). But when the application raises a constitutional claim, such as ineffective assistance of counsel, we review the proceedings de novo. *Sothman v. State*, 967 N.W.2d 512, 522 (Iowa 2021). Claims of actual innocence are also reviewed de novo. *Dewberry v. State*, 941 N.W.2d 1, 4 (Iowa 2019).

## II. Analysis

### A. Ineffective Assistance of Trial Counsel

To establish his claims of ineffective assistance, Hasselmann was required to prove (1) his counsel failed to perform an essential duty and (2) prejudice resulted. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984); *State v. Lopez*, 907 N.W.2d 112, 116 (Iowa 2018). We "may consider either the prejudice prong or breach of duty first, and failure to find either one will preclude relief."[1] *State v. McNeal*, 897 N.W.2d 697, 703 (Iowa 2017) (citation omitted).

*1. Trial Information Amendments*. Hasselmann was charged by trial information with three counts of first-degree theft under both the "theft by taking" and "theft by deception" alternatives. *See* Iowa Code § 714.1(1), (3) (2016). He was also charged with four counts of forgery. Three of the forgery counts concerned Hasselmann's use of fraudulent checks, while the fourth was for his use of a fraudulent driver's license.

---

[1] Because we resolve all Hasselmann's claims on the duty prong, we need not consider his argument that "trial counsel's cumulative errors prejudiced him." *See McPeek v. State*, No. 22-1870, 2024 WL 2042115, at *3 (Iowa Ct. App. May 8, 2024) ("We only engage in a cumulative-error inquiry when we 'analyze[] the prejudice prong of *Strickland* without considering trial counsel's failure to perform an essential duty.'" (alteration in original) (quoting *State v. Clay*, 824 N.W.2d 488, 501–02 (Iowa 2012)).

As Hasselmann's case progressed, the trial information was amended three times to correct mistakes in the dates of the crimes and the numbering of the counts. One of the amendments also removed the theft-by-taking alternative after the supreme court's decision in *State v. Nall*, 894 N.W.2d 514, 524 (Iowa 2017), which held that to "'[take] possession or control'" under section 714.1(1), "a person must acquire property without the consent or authority of another." Hasselmann claims that defense counsel "was ineffective in failing to inform [him] of the amendments to the trial information and object to them." The postconviction court rejected this claim, as do we.

Defense counsel testified that he did not recall discussing the amendments with Hasselmann. But each of the amendments was made prior to or during scheduled plea hearings that did not result in a change of plea. The amendments were discussed at those hearings, which Hasselmann attended. So the first part of Hasselmann's claim is belied by the record. As for the second part, we find that any objection would not have succeeded because the amendments did not prejudice the "substantial rights of the defendant" or charge a "wholly new and different offense." *See* Iowa R. Civ. P. 2.4(8) (2017); *State v. Maghee*, 573 N.W.2d 1, 6 (Iowa 1997) ("An amendment prejudices the substantial rights of the defendant if it creates such surprise that the defendant would have to change trial strategy to meet the charge in the amended [trial] information."); *State v. Vandermark*, 965 N.W.2d 888, 891 (Iowa 2021) ("An offense is not wholly new and different where the amendment charges the same base prohibition but alleges 'different means' of committing the same base prohibition."). As a result, counsel did not breach a duty for failing to raise meritless objections to the amendments. *See State v. Brothern*,

832 N.W.2d 187, 192 (Iowa 2013) ("We will not find counsel incompetent for failing to pursue a meritless issue." (citation omitted)).

2.    *Trial on the Minutes.*   Hasselmann next claims defense counsel "breached an essential duty in permitting him to consent to a trial on the minutes of testimony without first making sure he knew what was happening."   The postconviction court found that Hasselmann "made the decision to waive a jury trial intelligently, knowingly, and voluntarily."   We agree.

Before the stipulated bench trial on the minutes, Hasselmann twice tried to plead guilty to four of the charges under a plea agreement with the State.[2]  The first plea proceeding ended when Hasselmann could not provide a factual basis for his guilty pleas.   After that hearing, the parties revised their agreement to allow Hasselmann to enter *Alford* pleas[3] to the same four charges.   But at the second plea proceeding, Hasselmann changed his mind and decided that he wanted to proceed to trial.

Just over a week before the scheduled jury trial, Hasselmann reversed course and asked the trial court to set another plea hearing.   At the start of that hearing, the court stated, "This matter was originally scheduled for a guilty plea this morning.   It's my understanding now that things have changed and the parties wish to proceed with a trial on the minutes and additional evidence in this matter."

---

[2] The agreement was that Hasselmann would plead guilty to two counts of first-degree theft and two counts of forgery.  In exchange, the State would dismiss the other three counts and follow the recommendation of the presentence investigation report as to Hasselmann's sentence.

[3] *See North Carolina v. Alford*, 400 U.S. 25, 37–38 (1970) (permitting a criminal defendant to enter a guilty plea without admitting guilt by acknowledging strong evidence of guilt and voluntarily, knowingly, and understandingly agreeing to allow the court to consider such strong evidence of guilt in accepting the plea).

The record does not explain the reason for the change.  Defense counsel testified there were some "ongoing discussions with the judge," but he did not recall whether the judge "said she didn't want to do an *Alford*."  In any event, Hasselmann signed a written waiver of his right to a jury trial and, in a detailed colloquy with the court on the record, acknowledged that he was voluntarily, intelligently, and knowingly waiving that right.  *See State v. Liddell*, 672 N.W.2d 805, 811–12 (Iowa 2003).  Counsel testified that he reviewed the written waiver with Hasselmann and "answered any questions that he had."  He believed that Hasselmann "fully knew what was going on," noting he was "a smart kid."

Hasselmann, however, contends that although he "waived his right to a jury trial, he did not waive his right to a bench trial in the written waiver or during the colloquy with the judge."  But Hasselman received a bench trial—it was just on a stipulated factual record.  As required at the time, the court (1) verified Hasselmann's jury trial waiver on the record; (2) confirmed "the extent of the factual record to which the parties are stipulating"; and (3) found the "facts specially and on the record," separately stated its conclusions of law, and rendered a verdict.[4] *State v. Sayre*, 566 N.W.2d 193, 195 (Iowa 1997).  The postconviction court was not persuaded by Hasselmann's testimony at the postconviction-relief hearing "that he did not know what he was doing" considering the record made at the trial on the minutes.  We defer to that credibility finding, *see Ledezma v. State*, 626

---

[4] Updated Iowa Rule of Criminal Procedure 2.17(2), which became effective on July 1, 2023, added other requirements for trials on the minutes.  But Hasselmann did not mention this rule in the postconviction-relief proceedings or on appeal, and we apply the rule in effect at the time of Hasselmann's trial on the minutes.  *See, e.g., State v. Berg*, 12 N.W.3d 583, 584 & n.1 (Iowa 2024) (applying the rules in effect before the July 1, 2023 revisions).

N.W.2d 134, 141 (Iowa 2001), and find that defense counsel did not breach any duty as it relates to Hasselmann's decision to proceed with a trial on the minutes.

  *3.*  *Plea Offer for Probation.* In a somewhat related argument, Hasselmann contends that defense counsel led him "to believe there was a plea offer for probation at the bench trial on the minutes of testimony." When asked whether the State made any concessions in exchange for Hasselmann agreeing to a trial on the minutes, counsel testified that he thought "the State was going to agree to a joint recommendation of probation." And Hasselmann testified that when he waived the jury trial, he "thought everything was, like, a prerequisite to getting that *Alford* plea with the probation." There are three problems with this claim.

  First, Hasselmann had already been through two partial guilty plea proceedings before agreeing to a trial on the minutes. So, as the State argues, "he would have recognized the bench trial as something different." Second, the transcript from the trial on the minutes does not mention an *Alford* plea or any joint recommendation for probation. Instead, in its order finding Hasselmann guilty as charged and setting a sentencing hearing, the trial court noted: "State to argue for no more than 40 years. Defense to argue for whatever they want."[5] Third, Hasselmann filed nothing between the trial on the minutes and his sentencing hearing challenging that recitation of the parties' agreement. Nor did he object at the sentencing hearing when the State followed through with that recommendation and urged the court to sentence Hasselmann to forty years in prison. And

---

[5] The maximum prison sentence that Hasselmann was facing on all seven charges was an indeterminate term of fifty years.

Hasselmann does not claim that defense counsel was ineffective for failing to move to enforce this alleged agreement for a joint probation recommendation. Given this record, Hasselmann has not proven by a preponderance of the evidence that counsel induced his jury waiver by misrepresenting the State's sentencing position. Therefore, we find no breach of duty. *See State v. Majors*, 940 N.W.2d 372, 391 (Iowa 2020) (noting under the breach-of-duty prong, "our presumption is that counsel performed competently unless the claimant proves otherwise by a preponderance of the evidence").

4.      *Sufficiency of the Evidence*. Hasselmann's fourth claim asserts that defense counsel "breached an essential duty by failing to challenge the sufficiency of the evidence" for the theft convictions. The postconviction court rejected that claim, finding that while "Hasselmann denies he had fraudulent intent, . . . there was sufficient evidence in the minutes to support all elements of 'theft by deception.'" We agree.

The stipulated factual record established that law enforcement began investigating Hasselmann in November 2016 for using fraudulent cashier's checks to buy cars from three Des Moines dealerships. The dealerships did not learn the checks were forgeries until after Hasselmann left with the vehicles. Hasselmann used these checks—which appeared to be from a credit union—to buy a 2007 BMW on November 8, a 2003 Lincoln Aviator on November 18, and a 2015 Volkswagen Jetta on November 26 from the dealerships. The checks were made out for more than the price of the cars, and Hasselmann received the difference in cash. Hasselmann was arrested on November 29, and all three cars were recovered at his residence in Norwalk.

Under this record, Hasselmann argues "there was insufficient evidence that he had the intent to permanen[tly] deprive the car dealerships of the vehicles." *See State v. Fielder*, No. 18-0096, 2019 WL 1303965, at *5 (Iowa Ct. App. Mar. 20, 2019) (per curiam) (concluding the element of permanent deprivation is incorporated in the structure of section 714.1(3)). Proof of such intent "is seldom capable of being established with direct evidence." *State v. Schminkey*, 597 N.W.2d 785, 789 (Iowa 1999). Thus, the "facts and circumstances surrounding the act, as well as any reasonable inferences to be drawn from those facts and circumstances, may be relied upon to ascertain the defendant's intent." *Id.* We find the facts and circumstances in this case support an inference that Hasselmann intended to take more than temporary possession of the vehicles. *Id.*

Multiple witnesses saw Hasselmann driving the vehicles in the days and weeks after he obtained possession of them. He was arrested while driving the 2007 BMW twice—once in Des Moines on November 14 and again in East Moline, Illinois, on November 17. Hasselmann's bail bondsman saw him driving "a new SUV with paper tags" on November 15 and a Volkswagen Jetta sometime after that. *See State v. McCarty*, No. 03-1151, 2004 WL 894553, at *5 (Iowa Ct. App. Apr. 28, 2004) (finding sufficient evidence of permanent deprivation when the defendant "took the truck to a different town a significant distance from where it was stolen and it was not recovered for several days"). When the cars were recovered at Hasselmann's residence, police found more counterfeit checks in the BMW and Jetta. They also discovered a medical note for Hasselmann in the BMW, along with a motel receipt and a speeding ticket. *See Schminkey*, 597 N.W.2d at

791–92 (observing intent to permanently deprive can be shown by defendant's use of vehicle as his own).

We have also considered Hasselmann's shifting stories when he was interviewed by the police. At first, Hasselmann said that he bought the vehicles with cash. But when confronted with the fraudulent cashier's checks, Hasselmann claimed that he "got the checks from a guy named 'John' on Craigslist," and he was "a victim of a scam." If Hasselmann thought that he was the victim of a scam and only in temporary possession of the vehicles as part of a secret shopper job, "his statements and actions certainly spoke otherwise." *State v. Hawkins*, No. 12-0617, 2013 WL 535738, at *4 (Iowa Ct. App. Feb. 13, 2013) (noting the defendant's initial denial of knowledge about a stolen car was a fact that supported an inference of permanent deprivation).

Viewing this evidence in the light most favorable to the State, *see State v. Cook*, 996 N.W.2d 703, 708 (Iowa 2023), a reasonable fact finder could find beyond a reasonable doubt that Hasselman intended to permanently deprive the dealerships of the vehicles. Thus, counsel did not breach any duty in failing to challenge the sufficiency of the evidence for the theft convictions. *See Ruiz v. State*, ____ N.W.3d ____, ____, 2025 WL 806962, at *5 (Iowa 2025) ("Where a claimant alleges counsel's failure to pursue a particular course breached an essential duty, there is no such duty when the suggested course would have been meritless." (cleaned up)).

*5. Defense Counsel's Sentencing Recommendation.* For his fifth and final ineffective-assistance claim, Hasselmann asserts that defense counsel "breached an essential duty in arguing for prison when [Hasselmann] had not

authorized that recommendation." We agree with the postconviction court that the record from the sentence hearing does not support this claim.

At the sentencing hearing, the prosecutor urged the trial court to impose an indeterminate sentence of forty years in prison. In response, defense counsel discussed Hasselmann's difficult childhood and his need for substance-use and mental-health treatment. Counsel informed the court that an inpatient treatment facility had been located and argued:

> Our recommendation to the court for sentencing, taking those into account, would be if the court only considers incarceration, we think it should be no more than 15 years, so running a theft and a forgery consecutive to each other, but then running everything else consecutive.
> However, Mr. Hasselmann is willing to and wants me to tell the court that he would be willing to accept up to 20 or 25 years with probation and treatment so that he knows that he has this additional period of time should he fail probation.

Defense counsel did not, as Hasselmann suggests on appeal, argue incarceration as "the preferred recommendation," with probation "only suggested as an afterthought." Instead, counsel testified that his sentencing strategy was to give the court a reasonable middle ground if the court was only going to consider incarceration: "if we don't have an agreed upon sentencing, then yes, I'll ask for probation and then give an alternative that we feel—because I always discuss it with the client as to what we think would be an adequate incarceration time during everything." While Hasselmann didn't get the probation that he hoped for, the court did adopt counsel's lower incarceration recommendation. Under these circumstances, we find counsel's sentencing recommendation was "a product of tactics," not deficient performance. *See Ledezma*, 626 N.W.2d at 143.

**B.     Actual Innocence**

Hasselmann claims the postconviction court erred "in denying his application for postconviction relief when he is actually innocent of the theft by deception and forgery charges."  To succeed on this claim, Hasselmann must prove "by clear and convincing evidence that, despite the evidence of guilt supporting the conviction, no reasonable fact finder could convict the applicant." *Dewberry*, 941 N.W.2d at 5 (citation omitted).  This requires "factual innocence, not mere legal insufficiency."  *Id.* at 7 (citation omitted).

The postconviction court rejected Hasselmann's claim, finding:

> Hasselmann asserts that he thought he was purchasing vehicles as a "secret shopper" and that the vehicles obtained were going to be later returned to the dealerships.  He also submitted an exhibit that he claims supports the idea that he was unknowingly caught up in a scam.  Even if the newly submitted exhibit could be deemed newly discovered (which is unlikely given that it is dated prior to Mr. Hasselman's arrest) it and his testimony fall short of the clear and convincing evidence needed to support an actual innocence claim.

(Internal citations and footnote omitted.)  The court noted that the majority of Hasselmann's exhibit "does appear to be an attempt at recruiting for a 'fake job' scam" through an internet messaging app, with one page referencing auto dealership auditing.  But the exhibit does not show who created or sent the messages or attached documents, which included a blank W-9 form and fraudulent cashier's checks.  And, as the court found,

> [e]ven if someone had attempted to recruit Mr. Hasselmann into a scam, the wealth of evidence suggests he had to have known he was engaging in fraudulent conduct . . . .  His explanation at the [postconviction-relief] trial as to how he thought the "auditing" would be resolved was not credible.

We agree upon our de novo review of the record.

**C.      Ineffective Assistance of Postconviction and Appellate Counsel**

Last, in a new claim on appeal, Hasselmann argues that his first appellate counsel was ineffective for failing to raise the trial court's consideration of an improper sentencing factor on appeal.   We generally only consider claims that were first presented to the postconviction court.   *See Sandoval v. State*, 975 N.W.2d 434, 438 (Iowa 2022).   Hasselmann asserts his failure to do so here was due to the ineffective assistance of postconviction counsel.   Although ineffective-assistance claims "are not bound by traditional rules of error preservation," *Nguyen v. State*, 878 N.W.2d 744, 750 (Iowa 2016), "we only entertain such claims raised for the first time on appeal if the record is adequate and no prejudice would result to any party," *Porter v. State*, No. 23-1330, 2025 WL 407184, at *2 (Iowa Ct. App. Feb. 5, 2025).

There is no record before us to explain why neither counsel raised this issue.   *See Luke v. State*, 465 N.W.2d 898, 903 (Iowa Ct. App. 1990) (noting effective assistance does not require counsel "to raise every nonfrivolous issue urged by the client").   Without an adequate record explaining counsel's decision-making process, we decline to reach the merits of Hasselmann's claim.   *Porter*, 2025 WL 407184, at *2; *see also Goode*, 920 N.W.2d at 526–27.   We also decline Hasselmann's request to remand the claim for the district court to decide.   *See Goode*, 920 N.W.2d at 527 (declining to "remand claims of ineffective assistance of postconviction counsel raised for the first time on appeal to the district court to hear and decide" and directing such claims to "be filed as a separate application in district court").

**III.     Conclusion**

Having considered all claims raised on appeal, we affirm the decision of the district court denying Hasselmann's application for postconviction relief.

**AFFIRMED.**