# IN THE SUPREME COURT OF IOWA

No. 79 / 03–2085

Filed November 16, 2007

**STATE OF IOWA,**

Appellee,

vs.

**CHAD LAVERN ENDERLE,**

Appellant.

---

Appeal from the Iowa District Court for Scott County, David E. Schoenthaler and Mark J. Smith, Judges.

Defendant appeals from conviction for first-degree murder and willful injury in violation of Iowa Code sections 707.2(1), 707.2(2), and 708.4(1) (2001). **AFFIRMED.**

Kent A. Simmons, Davenport, for appellant.

Thomas J. Miller, Attorney General, Linda J. Hines, Assistant Attorney General, William E. Davis, County Attorney, and Michael J. Walton, Assistant County Attorney, for appellee.

**LARSON, Justice**.

Chad Enderle was convicted of first-degree murder and willful injury in violation of Iowa Code sections 707.2(1), 707.2(2), and 708.4(1) (2001). He appealed, claiming numerous errors, including the court's denial of his motion to suppress evidence obtained pursuant to a material-witness warrant and denial of his motion for judgment of acquittal based on the sufficiency of the evidence. We affirm.

### I. Facts and Prior Proceedings.

The defendant's convictions arose out of the death of Gregory Harris, whose body was found in Davenport, Iowa, on March 10, 2003. Enderle became a person of interest to the police when they found his cell phone number stored in the victim's cell phone memory. When the police contacted that number, the person answering denied he was Enderle. Within minutes after the police called, Enderle had his cell phone number changed. Believing Enderle would be uncooperative and might become unavailable for questioning, the police obtained a material-witness warrant pursuant to Iowa Code section 804.11. Pursuant to that warrant, Enderle was arrested and questioned at the police station.

### II. The Ineffective-Assistance Claims.

Enderle's counsel did not object to the admission of most of the evidence about which Enderle now complains, so he relies on ineffective-assistance-of-counsel principles to raise the issue on appeal. A defendant claiming ineffective assistance must prove (1) that counsel failed to perform an essential duty, and (2) he was prejudiced by his counsel's errors. *Ledezma v. State*, 626 N.W.2d 134, 142 (Iowa 2001). To prove prejudice, a defendant must show a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

would have been different." *Strickland v. Washington,* 466 U.S. 668, 694, 104 S. Ct. 2052, 2068, 80 L. Ed. 2d 674, 698 (1984). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

The defendant bears the burden of proving both elements by a preponderance of the evidence, *Ledezma,* 626 N.W.2d at 141–42, but it is not necessary that the court address both elements. If a defendant does not show prejudice, the case can be decided on that issue alone without the additional inquiry into whether counsel's performance was deficient. *Id.* at 142.

### III. The Material-Witness Warrant.

Iowa Code section 804.11 provides, in pertinent part:

> When a law enforcement officer has probable cause to believe that a person is a necessary and material witness to a felony and that such person might be unavailable for service of a subpoena, the officer may arrest such person as a material witness with or without an arrest warrant.

We upheld the constitutionality of section 804.11 in *State v. Hernandez-Lopez,* 639 N.W.2d 226, 231 (Iowa 2002). In doing so, we acknowledged that material-witness warrants "serve a vital and useful public purpose in the prosecution of felony offenses," and "are in widespread existence throughout this country." 639 N.W.2d at 236.

Section 804.11 requires that there be probable cause to believe (1) a person is a necessary and material witness to a felony, and (2) such person might be unavailable for service of a subpoena. In this case, the application for the warrant stated:

> On 3/10/03 the Davenport Police Dept. started a homicide investigation after finding the victim dead in his home at 326 W. 10th St. During the subsequent investigation detectives learned that Chad Enderle was involved with the victim, and visited him on a regular basis.

> One witness saw an M/W subject matching Enderle's description leaving the victim's residence around the time the victim would have been killed.
>
> The Davenport Police Dept. has made several attempts at locating Enderle and talking with him about this case. Detectives reached Enderle on a cell phone he used, but that he put in his girlfriend's name. Enderle lied about his name and told the Detective he didn't know the victim and refused to talk to him. Since this conversation the cell phone has been shut off. Detectives obtained cell phone records and discovered Enderle called the victim's residence 20 times over a very short period around the time the victim was killed. Again, on 03/18/03 Detectives tried to locate Enderle and were unable to. Detectives again went to Enderle's residence and knocked on the door, and no one answered. Upon looking in a front window Detectives saw a female we believe is Enderle's mother sitting in the living room only feet away from the front door. The female refused to come to the door.

We believe the material-witness warrant, based on this application, was supported by probable cause to believe both that Enderle was "a necessary and material witness to a felony" and "might be unavailable for service of a subpoena," as required by Iowa Code section 804.11.

Even if Enderle's counsel breached a duty to challenge the warrant, Enderle has failed to show he was prejudiced. Statements made by Enderle during the questioning did not amount to a confession, nor did they lead to other evidence of guilt. Enderle stated that the last time he had seen Harris was on March 5, 2003, and possibly the morning of March 6, 2003, the date the State claims the victim was killed. This evidence was merely cumulative of other evidence that placed Enderle at the victim's home at about the time of death. *See State v. Lane*, 726 N.W.2d 371, 383 n.2 (Iowa 2007) ("The independent source doctrine removes the taint of a prior illegality if the police obtained the same information or evidence through means independent of the illegal conduct.").

The strongest evidence of Enderle's connection to the crime was his fingerprints. Fingerprint samples were obtained from Enderle during this questioning under the material-witness warrant. However, his fingerprints could have been obtained, and ultimately were obtained, under a nontestimonial identification application under Iowa Code section 810.6. We conclude that Enderle was not prejudiced by his furnishing of fingerprint examplars or statements about his being at the victim's residence because this evidence was merely cumulative.

Other issues are raised concerning Enderle's interrogation under the material-witness warrant: (1) he was intimidated and promised leniency; (2) the videotaped interview contained a prejudicial statement by Enderle that he was a drug user; (3) Enderle was denied his statutory right to see a family member; and (4) the videotape, played to the jury at trial, included statements by the police to Enderle that they believed he had killed the victim.

Enderle's claim of intimidation is belied by the record—primarily the videotape of the questioning. The district court, David Schoenthaler, J., made detailed findings of fact regarding the interrogation, including the following:

> The Defendant's entire time at the Davenport police station during the evening of March 18, 2003, was captured on the interview tape (Exhibit 1) except for the first few minutes when he was read the warrant, fingerprinted, and photographed outside of the interview room. The Defendant is a 30 year old high school graduate who appears to be of at least average intelligence. The officers' testimony as to what happened that evening is credible and is confirmed by the tape. The Defendant was fairly calm throughout most of the interview. He made numerous references to wanting to see his woman. He was never threatened, deceived or promised favors or leniency; he was alert; he never complained of being tired or hungry and never asked for food, water, or to use the bathroom. The officers gave the Defendant a Pepsi following their denial of his request for a cigarette break. The Defendant was able to walk around the interview room

> in his stocking feet without any apparent difficulty after his shoes and orthotic device for one of his shoes were taken for testing. There is no evidence that during the Defendant's brief contact with Detective Martin and Detective Thomas outside the interview room that he was mistreated, given any improper promises, deceived or in any way subjected to anything that would affect the voluntariness of his statements.
>
> The main question is the interaction between Detective Thomas and the Defendant as shown on the tape. Some of Detective Thomas's questions irritated the Defendant which resulted in each of them shouting at the other one. Their voices could be heard outside the interview room. When the Defendant stood up and started to head for the door, Detective Thomas also stood up because he did not want the Defendant either standing over him or to go out the door. Tempers flared and it appears they bumped chests. They both calmed down and the interview continued.

The court did not err in denying Enderle's intimidation argument.

The "promise of leniency" relied on by Enderle was simply a statement by one of the officers that he would "see what he could do" to get the material-witness warrant "lifted" and get Enderle released after the conclusion of the interview. This does not amount to a promise of leniency that would present problems regarding receipt of other evidence, such as a confession.

The portion of the videotape in which Enderle admitted to using drugs was merely cumulative of a large amount of evidence from other sources to the same effect. Also, the district court engaged in a detailed weighing of the probative value of this evidence against the possible prejudice in it, as required by Iowa Rule of Evidence 5.404(b) and our case law. *See State v. Plaster*, 424 N.W.2d 226, 229 (Iowa 1988). The district court did not abuse its discretion in admitting the evidence.

Enderle also contends the evidence obtained under the material-witness warrant must be excluded because the police, at the time of the interview, violated Iowa Code section 804.20. Under that section,

> [a]ny peace officer or other person having custody of any person arrested or restrained of the person's liberty for any reason whatever, shall permit that person, without unnecessary delay after arrival at the place of detention, to call, consult, and see a member of the person's family or an attorney of the person's choice, or both.

Enderle requested to see his girlfriend, but a girlfriend is obviously not a member of his family. He now complains that he was also denied the right to see his son, who was under two years of age at the time. Even if we assume the police were required to allow Enderle to contact his son, Enderle's requested remedy—exclusion of evidence obtained at questioning—is not required. As we have previously noted, any evidence obtained as a result of the interview was merely cumulative.

During Enderle's interview, the police said they thought he was being untruthful, and the videotape of the interview, including those statements, was played to the jury. Enderle contends his trial counsel was ineffective because he failed to move for redaction of the comments, which he claims amounted to an impermissible comment on Enderle's credibility. *See State v. Myers*, 382 N.W.2d 91, 94 (Iowa 1986) ("No witness should be permitted to give his opinion directly that a person is guilty or innocent, or is criminally responsible . . . ."). Similar claims have been made and rejected in other cases, primarily on the basis that statements by police officers during interrogations are not "testimony" given by witnesses at trial and were not offered at trial to impeach the defendant, but to provide context for his responses. *See, e.g., Dubria v. Smith*, 224 F.3d 995, 1001–02 (9th Cir. 2000), *cert. denied* 531 U.S. 1148 (2001); *State v. Demery*, 30 P.3d 1278, 1282 (Wash. 2001). The effectiveness of Enderle's argument on this point is further diminished by the fact he raised it in the context of ineffective assistance of counsel, and he must therefore establish prejudice. He is hard-pressed to do so

because he chose to rely on those statements to show that he had been intimidated during the interview. We reject his argument that the police comments amounted to an impermissible comment on his credibility.

### IV. Sufficiency of the Evidence.

> The standard of review for insufficient-evidence claims is for correction of errors of law. The jury's findings of guilt are binding on appeal if the findings are supported by substantial evidence. Substantial evidence is evidence that could convince a rational trier of fact that a defendant is guilty beyond a reasonable doubt. When reviewing a challenge to the sufficiency of the evidence, we view the evidence in the light most favorable to the State, including legitimate inferences and presumptions which may fairly and reasonably be deduced from the evidence in the record.

*State v. Leckington*, 713 N.W.2d 208, 212–13 (Iowa 2006) (citations omitted).

The State provided the following evidence linking Enderle to Harris's death. Enderle was present at Harris's house on the evening of March 5, 2003, the day before the State claims Harris died. In addition, Enderle admitted that he may have been present at Harris's house on the morning of March 6, 2003, and made a phone call from there to a drug dealer named "Bill." The most significant evidence was that Enderle's fingerprints were found at the scene of the crime. His fingerprints were found at the murder scene on a walking stick found at the victim's home and spotted with the victim's blood. Enderle's fingerprints were also found on a cigarette box that had been spattered with the victim's blood. Enderle bought new boots just days after the murder, he was nervous when he was speaking with the police on the telephone, he lied about his identity in the telephone conversation, lied about his acquaintance with the victim, and lied about the last time he was in Davenport. Enderle changed his cell phone number just forty-five minutes after he spoke with the police. According to telephone records, Enderle did not attempt

to call the victim after March 5, 2003, strongly suggesting Enderle did not expect the victim to be able to answer the telephone. The district court properly refused Enderle's motion for judgment of acquittal.

**AFFIRMED.**