# IN THE COURT OF APPEALS OF IOWA

No. 16-1366
Filed December 6, 2017

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**MATTHEW SHAWN VICTOR BRIDGES,**
    Defendant-Appellant.
_____

Appeal from the Iowa District Court for Jasper County, Terry R. Rickers, Judge.


A defendant challenges his conviction for robbery in the first degree, as well as his convictions for two counts of using a juvenile to commit robbery. **JUDGEMENT AFFIRMED IN PART, REVERSED IN PART, AND REMANDED FOR NEW TRIAL AND RESENTENCING.**


Mark C. Smith, State Appellate Defender, and Melinda J. Nye, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, and Timothy M. Hau, Assistant Attorney General, for appellee.


Heard by Vogel, P.J., and Tabor and Bower, JJ.

**TABOR, Judge.**

Police determined that twenty-four-year-old Matthew Bridges enlisted two friends, both under eighteen years of age, to help rob a convenience store. The State charged Bridges with aiding and abetting robbery in the first degree and two counts of using a juvenile to commit robbery. A jury convicted Bridges of all three crimes.

On appeal, Bridges first seeks dismissal of all three convictions on the basis of insufficient evidence. Because we find substantial evidence to corroborate the accomplice testimony, we affirm on that ground. Alternatively, Bridges seeks a new trial on the first-degree robbery count, alleging his attorney should have objected to jury instructions outlining the elements of conspiracy when the State had not charged Bridges with conspiracy under Iowa Code section 706.1 (2015). Because those jury instructions—combined with a flawed trial information and the prosecutor's closing argument—allowed the jury to consider a form of vicarious liability not charged, we find a breach of duty and resulting prejudice. Accordingly, we reverse and remand for a new trial on the robbery conviction. We reject Bridges's remaining grounds for reversal, and affirm his convictions on the two counts of using a minor to commit robbery.

## I.    Facts[1] and Prior Proceedings

In November 2015, Bridges was forced to leave his father's home in Eldora because a no-contact order prohibited him from interacting with his brother, who also lived there. When Bridges moved out both his girlfriend, T.H., then seventeen

---

[1] A reasonable jury could have found the following facts based on T.H.'s trial testimony.

years old, and his friend, G.C., then sixteen years old, left with him. The three checked into the AmericInn in Iowa Falls. After a couple nights at that hotel, they ran out of money, and Bridges's father paid for one night's stay at the Super 8.

After their funds were depleted, Bridges concocted a plan to rob a convenience store and suggested G.C. act as the gunman. According to T.H., Bridges provided G.C. with a ski mask and BB gun. But G.C. expressed concern about getting into a shootout and preferred to have more imposing weaponry before moving forward. So they drove back to Eldora to get "a real gun" from the home of Bridge's father. Bridges sent G.C. into the house, telling him where to find the weapon.

Bridges next instructed T.H. to drive to State Center where he pointed out the Casey's General Store for G.C. to rob. T.H. recalled that G.C. objected to the location as having too much "open space," fearing he would be easily caught. So Bridges diverted the operation to Newton, where he had previously lived. In fact, Bridges had rented an apartment behind the Casey's General Store and was familiar with that Newton neighborhood. Bridges assured G.C. the new location would be easier to rob.

As part of the planning, Bridges walked with his two associates down a neighborhood bike path where he advised G.C. to "ditch" the gun and apparel after the robbery. T.H. testified Bridges assigned her to be the lookout because G.C. "didn't want to go in if there was customers" in the store. Back at the convenience store parking lot, T.H. gave the all-clear signal to Bridges and G.C. once the area was deserted. T.H. and Bridges then walked around the front of the building and

across the street to the Newton 66, another convenience store, while G.C. robbed the Casey's.[2]

After the threesome reunited, Bridges directed them to a friend's apartment where they divided up piles of crumbled bills between Bridges and G.C. They left once word of the robbery spread. According to T.H., Bridges eventually collected the cash and hid it along a gravel road. Later, Bridges and T.H. retrieved the money and spent it on restaurant meals, marijuana, clothing, and various other expenses.

Police arrested Bridges on November 6, two days after the Casey's robbery. A detective interviewed Bridges after his arrest and suggested several times during the recorded interview that Bridges was lying.[3] The State charged Bridges with robbery in the first degree, a class "B" felony, in violation of Iowa Code sections 711.1(a) and 711.2. The trial information alleged Bridges "either directly committed, or aided and abetted in the commission of, or conspired with or entered into a common scheme or design with one or more others to unlawfully commit a robbery against Casey's General Store." The State also charged Bridges with two counts of using a juvenile to commit certain offenses, class "C" felonies, in violation of Iowa Code section 709A.6.

Facing her own robbery charge and hoping to work out a plea deal, T.C. testified for the State at the jury trial, describing Bridges as the driving force behind the robbery. Bridges also testified, claiming ignorance of G.C.'s plan to rob the

---

[2] The State offered security camera video footage from the Newton 66 showing Bridges and T.H. walking in front of the Casey's and G.C. entering the store before it was robbed.
[3] The State played an audio-recording of the interrogation at trial over Bridges's objection.

Casey's and attributing the cash haul to his marijuana dealing. The jury convicted Bridges on all three counts.

The district court sentenced Bridges to concurrent indeterminate ten-year terms on the class "C" felonies and ran those consecutively with the twenty-five-year term for robbery. Bridges now appeals his convictions and sentences.

## II. Scope and Standards of Review

We employ varied standards of review to address the claims raised by Bridges on appeal. We review for errors at law Bridges's challenge to the sufficiency of the evidence corroborating accomplice testimony and the district court's refusal to submit a requested lesser-included-offense jury instruction. *See Herbst v. State*, 616 N.W.2d 582, 585 (Iowa 2000); *State v. Bugley*, 562 N.W.2d 173, 176 (Iowa 1997). We also review sentencing challenges for legal error; sentences within the statutory limits will only be set aside for an abuse of discretion. *State v. Thomas*, 547 N.W.2d 223, 225 (Iowa 1996).

We review de novo Bridges's claims of ineffective assistance of counsel. *See State v. Ondayog*, 722 N.W.2d 778, 783 (Iowa 2006). And we look for an abuse of discretion when evaluating his evidentiary challenge to the admissibility of an audio recording of a police interview. *See State v. Harrington*, 800 N.W.2d 46, 48 (Iowa 2011). Although to the extent the evidence claim is based on the hearsay rules, we review for the correction of errors at law. *See State v. Plain*, 898 N.W.2d 801, 810 (Iowa 2017).

### III. Analysis

### A. Evidence Corroborating T.H.'s Accomplice Testimony

Bridges alleges the State offered insufficient evidence to corroborate T.H.'s testimony connecting him to the armed robbery.[4]  He contends he was effectively convicted based on her word alone.

The State must corroborate accomplice testimony "by other evidence which shall tend to connect the defendant with the commission of the offense."  *See* Iowa R. Crim. P. 2.21(3).  "[T]he corroboration is not sufficient if it merely shows the commission of the offense or the circumstances thereof."  *Id.*  We view corroborating evidence in the light most favorable to the State, including every legitimate inference that may be deduced.  *See Bugely*, 562 N.W.2d at 176.  "[T]he corroboration of an accomplice's testimony need not be strong, nor must it confirm every material fact testified to by the accomplice.  It need only tend to connect an accused with the commission of a given crime."  *State v. King*, 256 N.W.2d 1, 10 (Iowa 1977).  Corroborating evidence may be direct or circumstantial.  *State v. Brown*, 397 N.W.2d 689, 695 (Iowa 1986).  But corroborative evidence must do more than "merely raise a suspicion the accused is the guilty party."  *State v. Gillespie*, 503 N.W.2d 612, 617 (Iowa Ct. App. 1993).

Bridges discounts two potential sources of corroboration—the testimony of his brother, Zakk, concerning the gun taken from their father's house and used in the robbery and security camera footage showing Bridges outside the Casey's moments before the robbery.

---

[4] The State does not contest T.H.'s status as an accomplice.

Zakk testified his brother expressed a desire to pick up the gun and later disclosed he had "already grabbed it" and was headed to Newton. Police discovered the gun south of the Casey's following the robbery. According to Bridges, his brother's testimony was inadequate corroboration because Zakk disliked him and was good friends with T.H. But it was for the jury to weigh the witness's motivation for testifying when considering the value of the corroborating evidence. *See Bugely*, 562 N.W.2d at 176 (noting sufficiency of corroborating evidence is question for the jury not the court).

Bridges also argues the security footage does not corroborate his participation in the crimes because he does not deny being in the vicinity. But the footage shows more than Bridges's presence outside the Casey's; it reveals conduct that T.H. described as reconnaissance. The jury could see Bridges and T.H. circling the building, T.H. peering around the corner waiting for possible witnesses to leave, and the pair reappearing after the area is clear, followed closely by G.C., who enters Casey's and robs it at gunpoint. The jury was entitled to interpret the footage and decide if Bridges's conduct was consistent with a clueless bystander, as he claims, or an active participant, as T.H. claims.

Even setting aside the corroboration provided by Zakk and the security footage, the State offered other evidence to bolster T.H.'s testimony. T.H. testified that before the robbery, the threesome walked a nearby bike trail and Bridges told G.C. to "ditch" his clothes along the trail after the robbery. An officer testified to finding sweatpants and a sweatshirt along the trail shortly after the robbery. The State also introduced several photos of the bike trail, strewn with clothing consistent with that worn by G.C. during the robbery.

The State also presented evidence to corroborate Bridges's financial motive for planning the robbery. T.H. testified Bridges was broke. His father testified he gave Bridges money for a hotel room. T.H. testified, when the threesome met up after the robbery, they went to the apartment of Bridges's friend and divided the proceeds in a bedroom. Bridges's friend testified he walked into his bedroom and saw the three sorting "small dominations of crumpled-up cash" shortly after the Casey's was robbed.

The State offered sufficient evidence to corroborate T.H.'s testimony from multiple sources—Zakk's testimony, the security footage, and the discarded clothing, as well as the testimony about Bridges's financial motivation. The jurors were free to review the totality of the evidence and determine if it connected Bridges to the crimes independently from T.H.'s testimony. *See id.* The district court properly denied the motion for judgment of acquittal on all three offenses because the jury's verdicts were supported by substantial evidence.

## B.      Counsel's Failure to Object to Conspiracy Instructions

The State charged Bridges with robbery, either as the principal[5] or an aider and abettor. The trial information—which the prosecutor read to the jury at the start of the trial—included a third alternative: Bridges "conspired with or entered into a common scheme or design with one or more others" to commit the robbery.

---

[5] The State did not present any evidence showing Bridges acted as the principal, but Bridges does not challenge the sufficiency of the evidence for that alternative theory.

On appeal, the State admits that passage was "erroneous" because the State did not charge Bridges with conspiracy under section 706.1.[6]

Against that backdrop, Bridges challenges his trial counsel's failure to object to a series of jury instructions setting out the law of conspiracy.[7]  To prove he

---

[6] "A conspiracy to commit a public offense is an offense *separate and distinct from any public offense* which might be committed pursuant to such conspiracy."  Iowa Code § 706.4 (emphasis added).

[7] At issue are the following six instructions:

Instruction No. 19
The State alleges that [Bridges], [G.C.], and [T.H.] were co-conspirators.  The State must prove all the following elements in order to prove that [Bridges] participated in a conspiracy:
1.  On or about the November 4, 2015, [Bridges] agreed with [G.C.] and [T.H.]
    a.  that one or more of them would commit a robbery, or solicit another to commit the robbery; or
    b.  attempt to commit the robbery
2.  [Bridges] entered into the agreement with the intent to promote or facilitate a robbery.
3.  [Bridges], or [G.C.], or [T.H.] committed an overt act.

Instruction No. 20
In order to prove that [Bridges] conspired to commit a robbery with [G.C.] and [T.H.], the State must prove [Bridges] and [G.C.] and [T.H.] came to a mutual understanding that a robbery would be attempted or committed.  The agreement can be oral or written, informal or formal, and need not be detailed.  It may be proven by direct or circumstantial evidence of a person's words, actions or gestures.

Instruction No. 21
Merely because two or more persons associate with each other, or meet to discuss common interests or goals does not, by itself, establish an agreement or make one a member of a conspiracy.

Instruction No. 22
An "over act" is any act indicating a person's intent to accomplish the robbery.  The overt act itself does not prove a conspiracy. A person who commits an overt act cannot be a conspirator unless that person also agreed and intended the robbery would be committed.

Instruction No. 23
The State does not have to prove [Bridges] knew all the details of the conspiracy nor all the other persons who had agreed to commit a robbery.  However, the State must prove [Bridges] knowingly participated in the agreement at some time.  If a person performs an act that promotes or facilitates the purpose of the conspiracy without knowledge of the conspiracy, he or she is not a conspirator.

received ineffective assistance of counsel, Bridges must show (1) trial counsel breached an essential duty when he lent his approval to the proposed jury instructions on conspiracy and (2) Bridges suffered prejudice as a result. *See Strickland v. Washington*, 466 U.S. 668, 687–88 (1984). Here, the record is adequate to address the claim on direct appeal. *See State v. Soboroff*, 798 N.W.2d 1, 8 (Iowa 2011).

### 1. Breach of Duty

We turn first to the performance prong. Bridges argues his attorney had a duty to "know the applicable law" and to protect him from a conviction stemming from a mistaken application of the law. He contends counsel was remiss in not objecting to the conspiracy instructions because they had "no relevancy" to his robbery case and would have been "confusing and misleading" to the jurors.

The State insists counsel had no duty to object to the conspiracy instructions. Citing *State v. Tonelli*, 749 N.W.2d 689, 691–92 (Iowa 2008), the State argues the court may instruct the jury on concepts of conspiracy even when the State has not charged the defendant under section 706.1. The State also asserts the disputed instructions gave the jury "particularized directives on what evidence of the conspiracy they could use to find Bridges guilty of robbery and when they could do so."

---

Instruction No. 24
Whether a person is a conspirator depends upon his or her own conduct or statements. If, however, you find [Bridges] agreed the robbery would be committed, then the conduct or statements of the others who agreed to commit robbery may be considered as evidence against him, providing the conduct or those statements promoted or facilitated the purpose of the conspiracy and occurred before the conspiracy ended. It is not necessary the conduct or statement of the others occurred in Bridges's presence.

The State reads *Tonelli* too broadly. *Tonelli* addresses what constitutes a "conspiracy" sufficient to trigger the rule of evidence concerning the admissibility of co-conspirator statements. 749 N.W.2d at 691 (discussing Iowa Rule of Evidence 5.801(d)(2)(E)). *Tonelli* held the definition of "conspiracy" for purposes of rule 5.801(d)(2)(E) was distinguishable from the definition of criminal conspiracy under section 706.1. *Id.* at 693. The court further concluded the rule on admissibility of co-conspirator statements would apply where the record included "evidence of a conspiracy to accomplish a criminal or unlawful act, or to do a lawful act in an unlawful manner, but not to combinations or agreements in furtherance of entirely lawful goals advanced by lawful means." *Id.* at 694. But *Tonelli* did not hold that a trial court may instruct a jury on the elements of an uncharged conspiracy.

The State further argues counsel was not obliged to object because "the jury instruction package as a whole" did not mislead the jurors as to the availability of the conspiracy alternative. The State points out neither the robbery marshalling instruction nor the verdict form mentioned a conspiracy alternative.

A defense counsel's failure to recognize an instructional error breaches an essential duty. *See State v. Hopkins,* 576 N.W.2d 374, 379–80 (Iowa 1998). Here, counsel had a duty to object to these free-floating conspiracy instructions—which had no valid connection to the robbery charge—though they immediately preceded the robbery marshalling instruction. Instructing the jury regarding a separate crime, not charged, creates a troubling due process question: How can the accused adequately prepare a defense against a phantom offense? The short answer is the accused cannot and due process protections ensure he or

she is not placed in that precarious position. *See State v. Hernandez–Lopez,* 639 N.W.2d 226, 241 (Iowa 2002) ("At the very least, due process requires the defendant to receive formal notice of the charges against him and an opportunity to be heard at a meaningful time in a meaningful manner."); *State v. Griffin,* 386 N.W.2d 529, 531 (Iowa Ct. App. 1986) (noting due process requires a defendant to be "apprised of the crime charged with sufficient certainty to enable him to prepare his defense"). By not objecting to the conspiracy instructions, defense counsel failed to perform an essential duty. *See Ondayog*, 722 N.W.2d at 785.

### 2.  Prejudice

Next, we must determine if counsel's failure to object to the conspiracy instructions resulted in prejudice to Bridges. *See id.* ("The question becomes whether there was a tactical reason for not objecting to the instruction."). The State suggests the record is "foggy" as to counsel's motivations for not objecting. The State contends even if the conspiracy instructions were inapplicable to the robbery charge, they "could only have worked to Bridges' advantage" by placing "an additional hurdle" in front of the prosecution.[8] The State further argues Bridges was not prejudiced because the prosecution offered "overwhelming evidence" to support his conviction for aiding and abetting the robbery, "for which the jury was given a correct instruction."

---

[8] The State asserts the instructions created "a prerequisite that the jury had to reach the conclusion that a conspiracy existed prior to considering T.H.'s testimony or G.C.'s out-of-court statements." We disagree with this assertion. The instructions placed no parameters on the jury's consideration of T.H.'s in-court testimony and the admissibility of G.C.'s coconspirator statements was a threshold legal question for the court. *See* Iowa R. Evid. 5.801(d)(2)(E).

We address the State's last point first. Flawed jury instructions "cannot necessarily be overcome" by giving other instructions that correctly state the law. *State v. Hanes*, 790 N.W.2d 545, 552 (Iowa 2010). Here, the jury returned a general verdict finding Bridges "guilty of robbery in the first degree, as charged in count one of the trial information" without specifying which theory or theories each juror relied upon. Of course, the trial information mistakenly included the conspiracy alternative, as well as aiding and abetting. Moreover, the court instructed the jurors that "[w]here two or more theories are presented, or where two or more theories would produce the same result, the law does not require each juror to agree as to which theory leads to his or her verdict." On the available record, we are left to guess whether the jury improperly gravitated to the State's conspiracy theory of robbery.

Aiding-and-abetting liability and conspiracy liability, while both allowing vicarious responsibility for another's actions, are distinct concepts governed by separate code sections. *Compare* Iowa Code § 703.1 *with* § 706.1; *see State v. Huser*, 894 N.W.2d 472, 504 (Iowa 2017) (noting "aiding and abetting and conspiracy are different concepts"). Our court has explained "[t]he law of aiding and abetting must be differentiated from a charge of conspiracy." *Shelton v. State*, No. 08-1962, 2011 WL 441932, at *4 (Iowa Ct. App. Feb. 9, 2011). "In conspiracy, a defendant engaged in a criminal act is liable for the acts of his coconspirators which were done in the furtherance of the common plan. However in aiding and abetting, the guilt of each person must be determined alone from the part he played in the transaction." *Id.* In other words, even though a defendant may be found guilty under a theory of conspiratorial liability based solely on an agreement to

commit a crime and a coconspirator's overt act, a defendant may not be convicted of aiding and abetting unless the State offers proof he has engaged in conduct designed to assist another in the commission of a crime. *See* Iowa Code § 703.1 ("The guilt of a person who aids and abets the commission of a crime must be determined upon the facts which show the part the person had in it, and does not depend upon the degree of another person's guilt.")

The jury could have concluded Bridges was guilty of conspiring with G.C. and T.H. from evidence that he secured their agreement to commit a robbery and then they engaged in acts indicating their intent to accomplish the crime, for example, obtaining a weapon or casing convenience store locations. The burden to prove robbery by aiding and abetting was arguably more onerous. The State was required to prove Bridges "lent countenance and approval" to G.C.'s criminal act "either by active participation in it or by some manner encouraging it prior to or at the time of its commission." *See State v. Vesey*, 241 N.W.2d 888, 891 (Iowa 1976). "[N]either knowledge nor proximity to the scene is—standing alone— enough to prove aiding and abetting." *State v. Lewis*, 514 N.W.2d 63, 66 (Iowa 1994). Because Bridges offered a counter-narrative that he had proximity to the robbery without knowledge or participation, we cannot be confident all of the jurors settled on the aiding-and-abetting theory rather than latching onto the alternative theory of conspiracy. Instructing the jury on the elements of conspiracy thus posed a risk that Bridges would be convicted of an uncharged crime.

The prosecution injected the theory of conspiracy liability into the trial—from the reading of the trial information to closing arguments. In closing, the prosecution made at least nine references to conspiracy as a method of convicting Bridges of

robbery.[9]  The prosecutor highlighted the conspiracy instructions: "In this case the State has presented two separate theories as the Judge has read the jury instructions to you.  One is conspiracy. . . .  The second theory has to do with Mr. Bridges and his aiding and abetting of what happened."  When reviewing the specific intent element of the robbery marshalling instruction, the prosecutor told the jurors that it was proven if Bridges "conspired with" G.C.  The prosecution's closing arguments contribute to our finding of prejudice.

Competent counsel should have lodged an objection to the conspiracy instructions, especially considering the defense pursued by Bridges—which attempted to thread the needle between associating with the gunman both before and after the robbery, yet disclaiming liability.  We find no strategic reason for trial counsel not to object to the irrelevant series of instructions on conspiracy.

A party is prejudiced when the district court's instructions materially misstate the law or confuse and mislead a jury.  *See Anderson v. Webster City Cmty. Sch. Dist.,* 620 N.W.2d 263, 267–68 (Iowa 2000).  When reviewing instructions in the context of an ineffective-assistance-of-counsel claim, we require the defendant to show a reasonable probability the outcome of the trial would have been different if the jury had not been led astray.  We find Bridges has satisfied that burden here.

---

[9] On appeal, the State argues any misstatements by the trial prosecutor are of no consequence because the court instructed the jurors that closing arguments are not considered evidence.  But the concern is not that the arguments would be viewed as *evidence*, the concern is the prosecutor misstated the *law* and exacerbated the faulty instructions on conspiracy.  *See State v. Clay*, 824 N.W.2d 488, 497 (Iowa 2012) ("A prosecutor can argue the law, but cannot instruct the jury on the law.").

While the State offered substantial evidence Bridges aided and abetted in the robbery, it was also within the jurors' prerogative to believe Bridges's version of events. Even if the jury rejected Bridges's story, it could have found the State proved conspiracy liability—rather than accomplice liability—and rendered its guilty verdict on a faulty basis. Had the jury not been instructed on the elements of conspiracy, we think there is a reasonable probability the outcome of his trial would have been different. *See Soboroff*, 798 N.W.2d at 9–10 (quoting language from *Strickland* that reasonable probability test for prejudice requires only a showing that the probability of a different result is "sufficient to undermine confidence in the outcome").

Because our confidence in the jury's verdict is shaken, we conclude counsel's failure to object resulted in prejudice and Bridges is entitled to relief. We reverse his conviction for first-degree robbery and remand for a new trial.

### C.    Requested Lesser-Included-Offense Instruction

Having concluded Bridges was not entitled to judgment of acquittal on any of the three offenses, and having also determined a new trial is warranted on his first-degree robbery conviction, we turn to his claims involving the two remaining convictions for using a juvenile to commit robbery. He again attacks the jury instructions.

Bridges requested a jury instruction on contributing to the delinquency of a minor[10] as a lesser included offense to using a juvenile to commit certain

---

[10] "It shall be unlawful: . . . To knowingly encourage, contribute, or in any manner cause such child to violate any law of this state, or any ordinance of any city."  Iowa Code § 709A.1(3).

offenses.[11] The trial court refused to submit the requested instruction, relying on our unpublished case of *State v. Rockwood*, No. 15-0289, 2016 WL 2745906, at *2 (Iowa Ct. App. May 11, 2016). On appeal, Bridges argues the district court was mistaken in not giving the jury the option of finding he was only guilty of contributing to the delinquency of a minor, which is a simple misdemeanor.

Iowa courts use the "impossibility test" to determine if one crime qualifies as a lesser included offense of another. *State v. Miller*, 841 N.W.2d 583, 588 (Iowa 2014). Under the impossibility test, we ask if the offender can commit the greater offense without also committing all elements of the lesser included offense. *Id.* We don't require the legislature to have described the elements of the two offenses in an identical manner. *See State v. Waller,* 450 N.W.2d 864, 866 (Iowa 1990) (equating elements statutorily described differently in greater and lesser offenses). To determine the existence of a lesser included offense, we first look at the elements of the marshaling instruction submitted to the jury. *See Miller*, 841 N.W.2d at 590. We then compare the elements described in the marshalling instruction to the statutory elements of the proposed lesser included offense. *Id.*

The marshalling instructions submitted at Bridges's trial for using a minor to commit certain indictable offenses under section 709A.6(2) required the State to prove:

> 1.     That on or about November 4, 2015, [Bridges] acted with, or entered into a common scheme or plan with, or conspired with, or recruited or used;
> 2.  A person under age 18, namely [T.H. or G.C.];

---

[11] "It is unlawful for a person to act with, enter into a common scheme or design with, conspire with, recruit or use a person under the age of eighteen, through threats, monetary payment, or other means, to commit an indictable offense for the profit of the person acting with, entering into the common scheme or design with, conspiring with, recruiting or using the juvenile." Iowa Code § 709A.6(2).

3. To commit a robbery;
4. Through threats or monetary payment or other means;
5. For the profit of [Bridges].

By comparison, it is unlawful under section 709A.1(3) (the proposed lesser included offense of contributing to delinquency) (1) to knowingly encourage, contribute, or in any manner cause (2) a child under eighteen years of age (3) to violate any law of this state, or any ordinance of any city.

| Offense | Elements | | | | |
|---|---|---|---|---|---|
| 709.6(2)/ Marshalling Instruction | Entered into a common scheme or plan with, or conspired with, or recruited or used | Through threats or monetary payment or other means | A person under age eighteen | To commit a robbery | For the profit of the defendant |
| 709A.1(3) (Contributing to the delinquency of a minor) | Knowingly encourage, contribute or in any manner cause | | Any child under eighteen years of age | To violate any law of the state, or any city ordinance | |

Bridges contends it was impossible for him to violate section 709A.6(2), as marshaled at his jury trial, without also contributing to the delinquency under section 709A.1(3). He points out both crimes involve enlisting (recruiting or using through threats or payment vs. encouraging or in any manner causing) someone under the age of eighteen to commit a crime (here robbery). The extra element in the greater offense is the profit motive for the defendant.

The State defends the district court's decision not to submit the proposed lesser included offense instruction. The State claims contributing to the

delinquency is not a lesser included offense of using a minor to commit robbery because the proposed lesser included offense requires proof of an extraneous element—knowledge that the other participant is under eighteen. The State asserts the phrase "knowingly encourage . . . such child" in section 709A.1(3) means the defendant must have knowledge the other person is a child. The State contends the absence of the word "knowingly" in section 709A.6(2) creates strict liability for the age element of the greater offense. Under the State's reasoning, a defendant *could be convicted of the class "C" felony*—using a juvenile to commit an indictable offense—regardless of whether the defendant knew the "used" person was a juvenile, but a defendant *could not be convicted of the simple misdemeanor*—contributing to the delinquency—without proof the defendant knew the "encouraged" person was a juvenile.

We are skeptical the legislature intended such a strange dichotomy—requiring knowledge of age for the non-indictable offense, but not for the felony. Iowa—like all other states—enacted its "contributing to delinquency" statute "to eliminate any variety of Fagin-Oliver Twist relationship" in our society. *See* James N. Kourie, Annotation, *Mens Rea or Guilty Intent as Necessary Element of Contributing to the Delinquency of a Minor*, 31 A.L.R.3d 848 (1970). The legislature enacted a forerunner of section 709.6A.1(3) in 1921. *State v. Simpson*, 118 N.W.2d 606, 609 (1962). The legislature "made this offense practically all inclusive to cover the field of all possible acts or series of acts that would contribute to or cause the delinquency of a child under 18 years of age . . . it took in the entire field of criminal law, both state and local." *Id.* "The intent of the legislature was to protect children." *Id.* Given that clear motivation for the law, we cannot read the

term "knowingly" as requiring proof that the defendant knew the age of the victim. *Cf. State v. Tague*, 310 N.W.2d 209, 212 (Iowa 1981) (rejecting mistake of fact as to victim's age as a defense to the charge of sexual abuse in the third degree and describing *People v. Atchison*, 583 P.2d 735 (Cal. 1978), which held that trial court erred in instructing jury that knowledge of age is immaterial to the charge of contributing to the delinquency of a minor, as minority view). To do so would provide less protection for children.

Moreover, when the legislature wants to make knowledge of age an element of the offense, it knows how to do so explicitly. *See* Iowa Code § 123.47 (prohibiting a person from selling, giving or otherwise supplying "alcoholic liquor, wine, or beer to any person *knowing or having reasonable cause to believe that person to be under legal age*" (emphasis added)). In the absence of such clear language, we decline to find the proposed lesser included offense requires a greater showing of mens rea than the greater offense. Contrary to the State's position, neither section 709A.6(2) nor section 709A.1(3) requires proof that a defendant knew the person that he encouraged or recruited person was a minor.

The State pulls an additional arrow from its quiver. It asserts section 709A.1 is not subject to a lesser included offense analysis because of the anti-merger language in section 709A.2. Section 709A.2 provides "A violation of section 709A.1 is a simple misdemeanor. A conviction does not bar a prosecution of the convicted person for an indictable offense when the acts which caused or contributed to the delinquency or dependency of the child are indictable." *See Simpson*, 118 N.W.2d at 609 (describing legislature's recognition that conviction of contributing to delinquency, a non-indictable misdemeanor, "should not bar a

prosecution for an indictable offense"). The State interprets section 709A.2 as allowing convictions under *both* 709A.1 and 709A.6, thus foreclosing a lesser-included-offense structure. We disagree with the State's interpretation. When discussing the possibility of two prosecutions, section 709A.2 is referring to the "indictable offense" the child is encouraged to commit. It is not referring to the later-enacted, indictable offense of using a minor in section 709A.6.[12] Section 709A.2 is not relevant to our lesser-included-offense analysis.

The only case examining whether contributing to delinquency should be instructed as a lesser included offense of using a juvenile to commit certain offenses is *Rockwood*, 2016 WL 2745906 at *1–2 (concluding contributing to delinquency under Iowa Code section 709A.1(1) is not a lesser included offense of using a juvenile to commit certain offenses). That case involved subsection (1) rather than subsection (3) of section 709A.1. *Id.* at *2. Subsection (1) makes it a crime "[t]o encourage any child under eighteen years of age to commit any act of delinquency defined in chapter 232." Iowa Code § 709A.1(1). Rockwood asserted the verb "encouraged," as used in subsection (1), fell within the using "other means" language in section 709A.6(2). *Rockwood*, 2016 WL 2745906, at *2. Our court concluded while "encouraging" the commission of a delinquent act could qualify as "other means" under section 709A.6(2), it was still possible to commit

---

[12] Section 709A.6 was originally enacted in 1992 as part of an omnibus juvenile justice package, much of which was vetoed by the governor due to budgetary and staffing limitations. H.F. 2452, 74th Gen. Assemb., 2d Sess. (Iowa 1992). The legislature criminalized using a minor to commit certain offenses as part of the Juvenile and Criminal Justice Act. *Id.* The act was intended to establish and increase penalties for offenses involving minors. *See id.* Originally, the legislature classified using a minor to commit certain offenses as a class "D" felony, but in 1995 it was amended and reclassified as a class "C" felony. *Compare id.*, *with* H.F. 528, 76th Gen. Assemb., Reg. Sess. (Iowa 1995).

the greater offense by means other than encouragement, thus the simple misdemeanor under section 709A.1(1) was not a lesser included offense. *Id.*

We find *Rockwood* distinguishable because subsection (3), at issue here, features more all-encompassing terminology than subsection (1). Subsection (3) prohibits a person from knowingly encouraging, contributing, *or in any manner causing* such child to violate any state law or city ordinance. Iowa Code § 709A.1(3). We believe it would be impossible to commit the greater offense of using a juvenile to commit a robbery without also knowingly encouraging, contributing, *or in any manner causing* that juvenile to violate a state law. Accordingly, we find the district court erred in not submitting the lesser included offense to the jury.

But that finding does not end our inquiry. An instructional error does not automatically warrant reversal. *State v. Negrete*, 486 N.W.2d 297, 298 (Iowa 1992). The omission of the proffered instruction is considered prejudicial if selling the jury on the reduced culpability offered by the lesser included offense formed "a primary part" of the defense. *Miller*, 841 N.W.2d at 596 (in prosecution for escape, finding omission of lesser included offense instruction on absence from custody was prejudicial because Miller's primary defense was that he failed to check back into facility after furlough).

Here, the difference between the proposed lesser included offense and the marshalled offense was the "for profit" element. *See* Iowa Code § 709A.6(2). Within section 709A.6 "'profit' means a monetary gain, monetary advantage, or monetary benefit." *Id.* at § 709A.6(1). Bridges's defense did not center on that element. Instead he denied any involvement in the robbery and claimed the cash

came from his marijuana sales. Because Bridges pursued an all-or-nothing defense, and the State offered substantial evidence from which the jury could find Bridges profited from G.C.'s robbery of Casey's, we find the instructional error to be harmless.

### D. Prosecution's Use of Interrogation Recording

### 1. Admission of Recording Over Bridges's Objection

Bridges filed a motion in limine to exclude the audio recording of his interrogation—arguing his statements were inadmissible hearsay. While arguing the motion, counsel for Bridges asserted his client was prejudiced by Detective Wing repeatedly calling Bridges a liar during the interrogation. The district court admitted the recording, and it was played for the jury during trial.

On appeal, Bridges focuses on the detective's statements during the interrogation, claiming they constituted impermissible commentary on Bridges's credibility. Our supreme court rejected a similar argument in *State v. Enderle*. *See* 745 N.W.2d 438, 442–43 (Iowa 2007) (concluding officer statements provide context for defendant's answers). In *Enderle*, the court concluded police officer statements "made during interrogations are not 'testimony' given by witnesses at trial and [are] not offered to impeach the defendant." *Id.* at 443. The officer statements provide context for the defendant's responses. *Id.*

The district court properly allowed the jury to hear Bridges's statements on the audio recording. *See* Iowa R. Evid. 5.801(d)(2)(A); *State v. Odem*, 322 N.W.2d 43, 47 (Iowa 1982) ("It is basic that a party may place into evidence the admissions of a party-opponent."). And the detective's statements were admissible to provide

context for Bridges's statements.  *See* Iowa R. Evid. 5.106;[13] *Enderle*, 745 N.W.2d at 443.

The district court also properly weighed the probative value of the recording against the risk of undue prejudice as required by Iowa Rule of Evidence 5.403.[14] *See State v. Davis*, No. 13-1099, 2014 WL 5243343, at *7 (Iowa Ct. App. Oct. 15, 2014) (noting district court must consider rule 5.403 after applying rule 5.106).  The jury was entitled to assess how Bridges responded to the detective's assertions Bridges was reformulating his account as the interview progressed.  As the State argues on appeal, the detective's accusations were the necessary "connective tissue" to explain Bridges's shifting recollections.  We afford district courts broad discretion in conducting the rule 5.403 balancing test. *See State v. Taylor*, 689 N.W.2d 116, 124 (Iowa 2004) (recognizing "wise judges may come to differing conclusions" and giving "much leeway to trial judges who must fairly weigh probative value against probable dangers" (citation omitted)).  We do not believe the district court abused its discretion in allowing the jury to hear the twenty-two minute recording.

### 2. Failure to Request a Limiting Instruction

---

[13] "When [a] . . . recorded statement, or part thereof, is introduced by a party, any other part . . . is admissible when necessary in the interest of fairness, a clear understanding, or an adequate explanation." Iowa R. Evid. 5.106.  Recordings of police interrogations may be presented in whole to place statements by the defendant in context. *See State v. Esse,* No. 03–1739, 2005 WL 2367779, at *3 (Iowa Ct. App. Sept. 28, 2005).

[14] "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Iowa R. Evid. 5.403.

Bridges next argues his trial attorney was ineffective for not requesting a limiting instruction to address the purpose for which the jurors could consider the detective's statements on the audio recording. A limiting instruction is required when evidence is admissible for one purpose but not another. *See* Iowa R. Evid. 5.105.[15] Bridges contends the jury should have been cautioned to use the detective's statements only for context and not for the truth of the matter asserted. In a factually similar case, our court concluded a limiting instruction was necessary. *See State v. Esse*, No. 03-1739, 2005 WL 2367779, at *3 (Iowa Ct. App. Sept. 28, 2005) (holding defendant was entitled to a new trial when district court denied a request for limiting instruction and appellate court couldn't determine if jury relied on the interrogator's repeated claims Esse was lying about his involvement in the crime).

Because his counsel did not request a limiting instruction, Bridges must demonstrate counsel omitted an essential duty and Bridges was prejudiced by the omission. *See Ledezma v. State*, 626 N.W.2d 134, 142 (Iowa 2001). Assuming competent counsel should have requested a limiting instruction as described in *Esse*, we find Bridges is unable to establish prejudice on this record.

The test for prejudice is whether "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694.

---

[15] "If the court admits evidence that is admissible . . . for a purpose—but not . . . for another purpose—the court, on timely request, must restrict the evidence to its proper scope and instruct the jury accordingly." Iowa R. Evid. 5.105.

We find no reasonable probability of a different outcome had counsel requested a limiting instruction concerning the proper use of the detective's statements accusing Bridges of lying during the interrogation. Bridges admitted at least six times during his own testimony that he lied to the detective. Bridges claimed he lied to hide his marijuana dealings, but nevertheless he confirmed the detective's accusations that he was not being truthful. Even with a limiting instruction concerning the detective's statements, the jurors would have been able to consider the truth of the matter asserted in Bridges's own admissions. Bridges is not entitled to relief on this claim of ineffective assistance of counsel.

**E. Sentencing**

**1. Imposition of Consecutive Sentences**

The district court sentenced Bridges to an indeterminate term of prison not to exceed twenty-five years for first-degree robbery and indeterminate terms of ten years each for two counts of using a minor to commit robbery. The later counts were to run concurrently to each other but consecutively to the robbery count. On appeal, Bridges challenges the district court's consecutive sentencing. Because we reverse Bridges's first-degree robbery conviction, his particular challenge to the consecutive sentences is moot. We remand for resentencing on the remaining two counts. *See State v. Nall*, 894 N.W.2d 514, 525 (Iowa 2017) ("When only one of several convictions is reversed on appeal, an appellate court may remand the entire case for resentencing.").

**2. Consideration of Juvenile Record**

The presentence investigation (PSI) report, which the district court reviewed before the sentencing hearing, contained information related to delinquency

adjudications received by Bridges. On appeal, Bridges contends the district court should have weighed the mitigating factors set out in *State v. Lyle*, 854 N.W.2d 378, 404 n.10 (Iowa 2014) when considering his juvenile record. We find no mandate in *Lyle* for Bridges's contention. In fact, *Lyle* specified: "This case does not move any of the lines that currently exist in the sentencing of adult offenders." *Id.* at 403. We decline to get ahead of our supreme court on this issue. *See State v. Bruegger,* 773 N.W.2d 862, 886 (Iowa 2009) (acknowledging "Bruegger's conduct as a juvenile" was relevant to sentencing).

### F. Conclusion

To recap, we find the district court properly denied the motion for judgment of acquittal on all three counts. But we conclude Bridges received ineffective assistance of counsel when his attorney failed to object to the conspiracy instructions impacting the first-degree-robbery conviction. We reverse and remand for a new trial on the robbery count of the trial information.

As for the other appellate claims, we conclude the court should have submitted the lesser included offense of contributing to delinquency, but we find the error was harmless considering Bridges's defense denying any involvement in the robbery. The district court properly admitted the audio recording of the interrogation, and while counsel should have requested a limiting instruction in relation to the detective's statements on the recording, Bridges cannot show prejudice as a result of counsel's inaction. We remand for resentencing on the two remaining counts and express no requirement that the district court apply the *Lyle* factors when considering Bridges's juvenile history.

**JUDGMENT AFFIRMED IN PART, REVERSED IN PART, AND REMANDED FOR NEW TRIAL AND RESENTENCING.**