# IN THE COURT OF APPEALS OF IOWA

No. 17-0870
Filed June 6, 2018

**STATE OF IOWA,**
　　　　Plaintiff-Appellee,

**vs.**

**CORION JAMAL PURSLEY,**
　　　　Defendant-Appellant.
_____

　　　　Appeal from the Iowa District Court for Black Hawk County, David P. Odekirk, Judge.


　　　　Corion Pursley appeals the convictions entered following his guilty pleas to two counts of second-degree burglary and one count of third-degree burglary. **AFFIRMED.**


　　　　Agnes G. Warutere of Warutere Law Firm, P.L.L.C., Clive, for appellant.

　　　　Thomas J. Miller, Attorney General, and Louis S. Sloven, Assistant Attorney General, for appellee.


　　　　Considered by Danilson, C.J., and Mullins and McDonald, JJ.

**MULLINS, Judge.**

Corion Pursley appeals the convictions entered following his guilty pleas to two counts of second-degree burglary and one count of third-degree burglary. He contends his counsel was ineffective in failing to: (1) challenge his guilty pleas to the second-degree-burglary charges on factual-basis grounds, (2) file a motion to suppress evidence obtained in a search of a vehicle involved in the crimes, (3) file a motion for a bill of particulars, and (4) pursue an intoxication defense before allowing him to plead guilty.

## I.    Background Facts and Proceedings

The following facts can be gleaned from the minutes of evidence. In the early morning hours of December 27, 2015, Sam Roberts encountered four young males at a gas station in Cedar Falls. At 4:48 a.m., Roberts called the police and advised these individuals followed him home from the gas station and were knocking on his front door. Roberts described the vehicle the subjects were driving as a "smaller silver colored SUV, possibly a Honda Pilot that had a handicap sticker hanging in the window."

At 5:07 a.m., Larry and Judy Timmins contacted law enforcement and reported they were awoken in their home when someone walked into their master bedroom as they slept. The suspects fled when Larry directed Judy to call the police. Larry observed the suspects fleeing in what appeared to be a "light colored minivan." Officers arrived and discovered a rock had been thrown through a glass door, several drawers throughout the residence had been rummaged through, and the doors on two refrigerators in the home were left open. However, Judy's purse and laptop were left untouched.

At 6:07 a.m., Virginia Berg called the police and reported she thought someone was in her neighbor's residence. This residence belonged to the Clippertons, who were out of town on the morning in question. Officers arrived at the Clipperton residence and discovered the front door had been kicked in, the apartment had been "ransacked," and, again, the refrigerator door had been left open.

At 6:27 a.m., Nikki Nielsen contacted law enforcement and advised "some people busted down her door and entered her residence." The subjects fled when Nielsen confronted them. Nielsen stated the subjects were in a silver SUV and advised one of the subjects was wearing a Bears jersey and stocking hat. Sometime during the foregoing course of events, Margo Campbell heard pounding on her porch door. Because she was near the door at the time, Margo opened it and observed three males standing on her porch. The subjects were surprised when Margo opened the door. They paused and then asked if "Jimmy" was home. Margo advised they had the wrong house, upon which the subjects left in what Margo described as a "white SUV."

A short time after Nielsen's report of an intrusion, a description of the suspect vehicle was relayed to patrol officers. Officers subsequently initiated a traffic stop on a silver Honda Pilot.[1] The vehicle was occupied by four males, one of whom was wearing a Bears jersey and stocking hat. The vehicle's occupants—the driver, Ny'Jawon Alexander; and passengers, Pursley, Jacane Campbell, and

---

[1] Around this time, another officer was reviewing video footage at the gas station where Roberts initially encountered the subjects. At approximately 4:46 a.m., the video depicted a silver Honda Pilot near the front doors of the gas station. The license plate on the vehicle in the video matched the license plate of the vehicle officers stopped.

D.C.[2]—were all detained separately. At the scene, Pursley advised officers the vehicle belonged to his girlfriend. The driver of the vehicle, Alexander, provided officers with verbal and written consent to search the vehicle. During the ensuing search, property was discovered bearing the name of the Clippertons. Officers decided to discontinue the search at this time and apply for a search warrant. The vehicle was impounded and a search warrant was applied for. Sasha Nelson came to the police station where the codefendants were being held and advised officers the silver Honda Pilot belonged to her.

In a subsequent interview, after waiving his *Miranda* rights, Pursley stated the vehicle belonged to Sasha, but made no statements related to the burglaries. Pursley advised an officer he had smoked marijuana and "sipped" alcohol the prior day and had taken "illegal Xanex pills" a week ago, but stated he was "sober now though." In their interviews, Alexander, Campbell, and D.C. denied any knowledge of the burglaries. In a second interview two days later, Alexander admitted the group "burglarized three or four houses."

Pursley was charged by trial information with two counts of second-degree burglary and one count of third-degree burglary. Pursley ultimately pled guilty as charged. At the plea hearing, Pursley stipulated to the court's consideration of the minutes of evidence in determining whether factual bases supported his pleas. As to the second-degree-burglary charges, Pursley admitted he broke into occupied structures not open to the public with the intent to commit a theft therein and he did not have any right, license, or privilege to do so. Pursley initially requested

---

[2] D.C. was a juvenile at the time of these events.

immediate sentencing, but after the court advised him of his right to file a motion in arrest of judgment to challenge his plea, he requested sentencing at a later date. Thereafter, Pursley filed a motion in arrest of judgment, contending he "did not fully understand the plea proceedings" and he "now wishes to withdraw his plea of guilty and set this matter for trial." Pursley subsequently withdrew this motion. The district court sentenced Pursley in accordance with the parties' plea agreement. As noted, Pursley appeals.

**II.    Discussion**

Pursley asserts his counsel was ineffective in a number of respects. We review ineffective-assistance-of-counsel claims de novo. *State v. Henderson*, 908 N.W.2d 868, 874 (Iowa 2018). To succeed on a claim of ineffective assistance of counsel, Pursley "must establish by a preponderance of the evidence that '(1) his trial counsel failed to perform an essential duty, and (2) this failure resulted in prejudice.'" *State v. Lopez*, 907 N.W.2d 112, 116 (Iowa 2018) (quoting *State v. Harris*, 891 N.W.2d 182, 185 (Iowa 2017)); *accord Strickland v. Washington*, 466 U.S. 668, 687 (1984). We "may consider either the prejudice prong or breach of duty first, and failure to find either one will preclude relief." *State v. McNeal*, 897 N.W.2d 697, 703 (Iowa 2017) (quoting *State v. Lopez*, 872 N.W.2d 159, 169 (Iowa 2015)). A failure to register meritless motions or arguments does not amount to ineffective assistance of counsel. *See State v. Tompkins*, 859 N.W.2d 631, 637 (Iowa 2015).

A.    Factual Bases

Pursley contends his guilty pleas to the second-degree burglary charges lacked factual bases and his counsel was therefore ineffective in allowing him to

enter the pleas and thereafter failing to challenge them by way of a motion in arrest of judgment. Specifically, Pursley argues there was no evidence to support a finding that he intended to commit a theft at the Timmins or Nielsen residences. He further argues his express admission to the court at the plea proceeding that he broke into the occupied structures with the intent to commit a theft is not supported by other evidence and therefore cannot provide factual bases for the pleas.

"Defense counsel violates an essential duty when counsel permits defendant to plead guilty . . . when there is no factual basis to support defendant's plea." *State v. Ortiz*, 789 N.W.2d 761, 764 (Iowa 2010); *accord State v. Nall*, 894 N.W.2d 514, 525 (Iowa 2017). Likewise, counsel violates an essential duty when counsel fails to challenge a plea lacking a factual basis by way of motion in arrest of judgment. *State v. Brooks*, 555 N.W.2d 446, 448 (Iowa 1996). Prejudice is presumed under these circumstances. *See Nall*, 894 N.W.2d at 525. If Pursley's pleas were supported by factual bases, then his counsel was not ineffective.

"In deciding whether a factual basis exists, we consider the entire record before the district court at the guilty plea hearing, including any statements made by the defendant, facts related by the prosecutor, the minutes of testimony, and the presentence report," if any. *State v. Schminkey*, 597 N.W.2d 785, 788 (Iowa 1999). "This record, as a whole, must disclose facts to satisfy the elements of the crime." *State v. Keene*, 630 N.W.2d 579, 581 (Iowa 2001). We must only "be satisfied that the facts support the crime, 'not necessarily that the defendant is guilty.'" *Id.* (citation omitted). Evidence that the crime was committed by the

defendant beyond a reasonable doubt is not necessary. *State v. Finney*, 834 N.W.2d 46, 62 (Iowa 2013).

Iowa Code section 713.1 (2015) defines the act of burglary as follows: "Any person, having the intent to commit a . . . theft therein, who, having no right, license or privilege to do so, enters an occupied structure, such occupied structure not being open to the public, . . . commits burglary." Such an act amounts to burglary in the second degree when it is perpetrated "in or upon an occupied structure in which one or more persons are present." Iowa Code § 713.5(1)(b).

Pursley only challenges the intent-to-commit-theft element. The court had before it the minutes of evidence, Pursley's statements (specifically the statement that the crimes were committed with an intent to commit theft), and the facts related by the prosecutor. Upon our de novo review of these materials, we are satisfied the facts support the crime and conclude factual bases existed for both of the challenged pleas. Counsel was therefore not ineffective in allowing Pursley to enter the pleas or in failing to challenge the pleas by way of a motion in arrest of judgment.

B.    Motion to Suppress

Next, Pursley argues his counsel was ineffective in failing to file a motion to suppress evidence obtained in the search of the vehicle involved in the burglary spree. He argues the consent given by Alexander before the initial search at the scene of the crime was invalid because Alexander had neither actual nor apparent authority to consent to the search. He alternatively argues Alexander's consent was not voluntarily given. We need not address the validity of consent, as we agree with the State's argument that, had counsel filed a motion to suppress the

evidence obtained in the vehicle search, the motion would have been meritless because Pursley, as a mere passenger in a vehicle he did not own, had no reasonable expectation of privacy in the vehicle and therefore no standing to challenge the search. *See Rakas v. Illinois*, 439 U.S. 128, 148–50 (1978); *State v. Halliburton*, 539 N.W.2d 339, 342–43 (Iowa 1995). In the alternative, Alexander's consent was not the only exception to the warrant requirement present in this case. Specifically, the requirement of a warrant is excepted "when probable cause and exigent circumstances exist at the time" of the search. *State v. Storm*, 898 N.W.2d 140, 145 (Iowa 2017). "The inherent mobility of motor vehicles satisfies the exigent-circumstances requirement." *Id.* The string of forced entries, the "ransacked" status of the involved residences, and the fact that Pursley and his cohorts generally matched the descriptions provided in all accounts provided the police with probable cause to believe the vehicle contained stolen property. *See State v. Hoskins*, 711 N.W.2d 720, 726 (Iowa 2006) (defining probable cause).

Because we conclude a motion to suppress evidence obtained in the vehicle search would have been meritless, counsel was not ineffective in failing to raise it. *See Tompkins*, 859 N.W.2d at 637.

C.      Bill of Particulars

Pursley argues the trial information under which he was charged "did not list the occupied structures which [he] allegedly broke into" and "[w]ith the [t]rial [i]nformation's failure to state with particularity which residence each count related to, [his] counsel ought to have filed a motion for bill of particulars." The quoted caselaw Pursley cites to support his argument provides the following:

> To avoid a violation of a criminal defendant's right to due process of law, an indictment or trial information a*nd its accompanying minutes of evidence* that charges a defendant with multiple counts of the same crime should in some manner differentiate among the charges.

*State v. See*, 805 N.W.2d 605, 607 (Iowa Ct. App. 2011) (emphasis added). Here, the minutes of evidence expressly listed the structures Pursley allegedly entered and unambiguously explained the second-degree-burglary charges concerned the two occupied structures—the Timmins and Nielsen residences—while the third-degree-burglary charge concerned the unoccupied structure—the Clipperton residence. The trial information and minutes of evidence sufficiently provided Pursley with the particularity he now claims he did not receive. We find counsel was not ineffective in failing to file a motion for bill of particulars.

D. Intoxication Defense

Finally, Pursley contends his counsel was ineffective in allowing him to plead guilty without first pursuing an intoxication defense, despite being aware of grounds for pursuing it. Pursley forwards the conclusory statement that "[b]y allowing [him] to plead guilty without pursuing the defense, counsel was ineffective." Pursley provides us with no analysis on if or why he was prejudiced from this alleged breach of duty. When challenging a guilty plea through a claim of ineffective assistance of counsel, "in order to satisfy the prejudice requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he or she would not have pleaded guilty and would have insisted on going to trial." *State v. Straw*, 709 N.W.2d 128, 138 (Iowa 2006). There is no evidence in the record, and Pursley does not even argue, that, had counsel pursued an intoxication defense, he would have forgone the guilty plea and

insisted on proceeding to trial.  Because Pursley did not meet his burden to show prejudice, his ineffective assistance of counsel claim fails.

## III.    Conclusion

We find Pursley's counsel was not ineffective as alleged.  We therefore affirm Pursley's convictions.

**AFFIRMED.**